LITTLE et al., etc., Defendants in Error, v. CUNNING-HAM et al., Plaintiffs in Error.

St. Louis Court of Appeals, February 13, 1906.

1. EQUITY: Clean Hands. The rule that one seeking relief in a court of equity must come with clean hands, prevents a court of equity from granting relief in favor of one who is seeking the same relief *vi et armis.*

2. ———: Status at Time Relief is Granted. The principles of equity are applied to the status of the case and the parties as they appear at the time the relief is administered rather than as they appeared at the date suit was instituted.

3. ———: ———: Clean Hands. Where parties sought relief by injunction to restrain the acts of a wrong doer, and, while the suit was pending, obtained by force of arms the relief prayed for in their bill, they should be denied relief. -

Error to Knox Circuit Court.—*Hon. E. R. McKee,* Judge.

REVERSED.

O. D. *Jones* for plaintiff in error.

G. R. *Balthrope* and C. D. *Stewart* for defendant in error.

STATEMENT.—The plaintiffs in error were the defendants in the court below. The bill prays an injunction against defendants, restraining them from maintaining a call bell and private telephone in connection with the main line of an unincorporated voluntary association owning a small telephone line for mutual convenience in Knox county. The facts substantially are

116 App—35

that twenty-two farmers, one of whom is the present defendant, John H. Cunningham, voluntarily associated themselves together and without being incorporated for that purpose, denominated and styled their association "The Rutledge & Greenburg Telephone Company," the purpose and object of which was to erect and maintain a small neighborhood telephone line of about twelve miles in length; each member of the association, was to and did pay, on becoming a stockholder in the association, the sum of ten dollars. With this fund the line was constructed. About the same time a constitution and certain by-laws were adopted for the government of the association by the provisions of which the management of the company and its property was vested in three directors who were chosen and entered upon the duties of said office. They chose a president and secretary from among their number. By the constitution and by-laws it was provided that each stockholder of the concern was to have the right to connect a telephone in his residence with the line, the member purchasing and owning such telephone, at an additional expense of about fifteen dollars each. Under this arrangement, defendant John H. Cunningham, as such stockholder, had installed in his home a telephone. The defendant, Logan Rule, owned no stock in the association nor had he any right to participate in the enjoyment and advantages of the telephone line. He was a neighbor and friend of Cunningham, however, and installed in his residence a telephone and by mutual friendly arrangement with Cunningham, ran a wire into the residence of the latter and by means of what is termed in the record a "call bell," his telephone was attached to the telephone maintained by Cunningham in connection with the main line. The theory of the defendant is that it was merely a neighborly arrangement whereby Cunningham and Rule and their families could have private communication and Mr. Cunningham would not be required to contract the additional expense in providing a different telephone for the

neighborly line mentioned, the one instrument serving both lines. The result of this arrangement, however innocent the motive, was to provide Mr. Rule and his family connection with the main line, of which they took advantage by frequently holding conversations with others than their neighbor Cunningham along said line. The directors and a number of the stockholders of the association protested against this invasion of their rights but to no avail. On one occasion a committee representing the association called upon Mr. Cunningham and sought to have him remove the call bell and disconnect what was known as the Rule line. This he declined to do. Some feeling was manifested on either side of the controversy and persuasive influence having failed to prevail, the board of directors were instructed to institute this proceeding and the suit is brought by the directors as trustees of an express trust on behalf of all of the members of the association. The bill alleges substantially the facts as stated with a greater degree of precision than is here necessary and alleges a violation of the rights of the association and its membership by reason thereof; irreparable injury, etc., that no adequate remedy at law may be had on account thereof, etc., and prays the court to grant injunctive relief to the effect "that the defendants may be perpetually restrained and enjoined from maintaining said line and connection of the said line of said Rule with the line of said association and that they may be compelled to remove said call bells and prohibited in the future from connecting the line of said Rule with the line of said association and that the said Rule be perpetually enjoined and restrained from the use of said line of said association and for such other and further relief as to the court may seem just and proper."

The answer was a general denial and on the 8th day of June and at the June term, 1903, of the Knox Circuit Court, the cause came on for trial. The court impaneled a jury and took its verdict upon certain material is-

sues of fact, which were submitted in three several interrogatories pertaining to the merits of the controversy. The verdict was in the affirmative and found the facts as stated. Thereupon, without proceeding further, the cause was continued by the court to the December term, 1903, and at the December term, without a further hearing, the cause was continued by the court a second time until the June term, 1904. At the June term, 1904, on the 11th day of June, more than one year after the verdict of the jury aforesaid, the cause came on for further hearing before the judge and the defendants filed their amended answer raising several questions, among which it is alleged that during the pendency of the suit and since the verdict of the jury at the June term aforesaid, plaintiffs, without warrant of law, proceeded to and did, in a high-handed manner, etc., cut the wire belonging to defendant Cunningham and thereby disconnected his telephone and of course that of Rule from the main line and thereafter maintained its telephone line without defendants being connected therewith. On this score, one of the plaintiff directors testified, and in fact the uncontradicted evidence shows, that the plaintiffs proceeded without authority on July 21, 1903, shortly after the verdict of the jury aforesaid and about eleven months prior to a final hearing and decree in this case, to cut the wire as alleged, thereby disconnecting Cunningham from the line of the association, which action operated as well to disconnect the Rule line, and they ever after remained so disconnected. Notwithstanding the conclusive showing that the plaintiffs had thus proceeded *vi et armis* to administer for themselves a portion at least of the relief for which they pray in the bill, the court decreed a perpetual injunction as prayed.

There are a number of assignments of error. One alone will be noticed and that is the action of the trial court in granting the relief prayed, in view of the facts last above stated.

NORTONI, J. (after stating the facts).—1. One of the ancient and familiar maxims of equity jurisprudence is that "he who comes into equity must come with clean hands." The maxim has been otherwise stated: "Who does iniquity shall not have equity." [Bleakley's Appeal, 66 Pa. St. 187; Hershey v. Weiting, 14 Wright, 244-5; 50 Pa. St. 240; Millington v. Hill, Fontaine & Co., 47 Ark. 311.] "They must come with clean hands, with a conscionable regard for the rights of others, ready to do equity on their part, and seeking only equity at the hands of the court." [McVey v. Brendel, 144 Pa. St. 235-249.] And in discussing this salutary principle, it is said: "Generally when a party seeking the intervention of equity has been attemping to secure his ends by means resembling those which he seeks to enjoin he will be denied relief." [11 Amer. and En. Ency. Law (2 Ed.), 163.] In Sinsheimer v. United Garment Workers, 77 Hun 215-218, it is said by the Supreme Court of New York:

"It is a familiar principle in equity that the plaintiff must come into court with clean hands. Under the circumstances disclosed by the papers in this case, if the defendants were guilty of any violation of law, the plaintiffs were certainly equally implicated, and under this condition of affairs it is difficult to see how they would have a right to the intervention of a court of equity. In dealing with questions of this nature the court should be studious to see that the rights of all parties are protected; and that the forms of law should not be permitted to be used on behalf of one party against another, when the party seeking the intervention of the court has been endeavoring to secure his ends by means similar to those which he seeks to enjoin on the part of his antagonist."

2. The principles of equity identical with the principles of justice and truth as they are, are applied by a court of conscience on the status of the case and the parties as they are revealed at the time the relief is admin-

istered by decree, rather than at the date of the institution of the suit, inasmuch as by virtue of these wholesome principles, arise the conditions which are imposed by the court "as the price of the decree it gives," and if unfavorable circumstances have arisen by the wrongful conduct of the parties during the pendency of the suit, the court will take such circumstances into account at the final reckoning and dispose of the controversy by ascertaining the then existing equities of the case and dispose of the same in "the form and frame of the orders and decrees, both interlocutory and final, whereby equitable terms are imposed as a condition precedent to equitable relief granted," if any be granted. [Whalen v. Reilley et al., 61 Mo. 565-570.]

From the principles enunciated, it appears that whatever may have been the rights of the defendants in error to the relief prayed for at the time of the filing of the bill and at the time of the trial of the interrogatories by jury at the June term, 1903, it was the duty of the court to be guided on the final hearing by the principles of equity as they were invoked by the changed conditions appearing from the uncontradicted evidence then adduced, and to have entered its decree in accordance with the facts then developed and the equitable principles applicable thereto.

It is palpable that the defendants in error, by their unwarranted intrusion in cutting the wire and disconnecting the plaintiffs in error from the main telephone line during the pendency of the suit and thus assuming to themselves without warrant, authority to acquire by force of arms the relief which they had prayed the court by their bill to grant, placed themselves as much beyond the pale of conscionable conduct as had plaintiffs in error by their acts complained of in the bill. Indeed, it is true that plaintiffs in error were the first wrongdoers, but the doctrine that a prior wrong on the part of one will justify a subsequent wrong on the part of the other certainly can have no countenance in a court of equity

where the principles that "he who seeks equity must do equity" and "he who seeks equity must come with clean hands," guide and direct the chancellor. It is manifest from the record that the cause of the defendants in error became polluted during the pendency of the suit with the same character of wrongful conduct toward the rights of the plaintiffs in error as had the cause of the plaintiffs in error been polluted by the prior misconduct on their part, and the cause of the defendants in error having thus become soiled with their own iniquity, they could have no equity. It therefore appears to the court from the uncontroverted evidence adduced at the final hearing, that there was no equity in the case of the defendants in error at the time of the decree, and the relief should have been denied.

For the reasons given, the judgment is reversed, the injunction dissolved and the bill dismissed. *Bland, P. J.,* and *Goode, J.,* concur.