CARL D. PFENDER, respondent,

*v.*

LILLIAN E. PFENDER, appellant.

[Decided October 15th, 1928.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Berry, who delivered the following opinion:

"This is a petition for divorce on the ground of extreme cruelty.

"The defendant, in December, 1926, filed a bill for separate maintenance on the ground of desertion. In April, 1927, the petition in this cause was filed, and the defendant filed a counter-claim for divorce on the ground of extreme cruelty. The two suits were then consolidated. At the final hearing the defendant withdrew her counter-claim, with the understanding that the facts therein alleged were urged as a defense to the petition.

"At the conclusion of the hearing I announced privately to counsel that I was of the opinion that the petitioner had sustained his petition and was entitled to a decree. Counsel for defendant requested permission to submit a brief in his client's behalf, particularly on the question of condonation. That brief has now been submitted and considered, but I am 'of the same opinion still.'

"It is unnecessary for me to review in detail the evidence on which I have reached my conclusion. Numerous acts of cruelty on the part of the defendant wife toward the husband were alleged in the petition, some of which found little support in the evidence submitted, and some of which I considered to have been maintained, but which standing alone and without the event which culminated in the separation of the parties on October 21st, 1926, I did not consider as suffi-

cient justification for the abandonment of the defendant by the petitioner. Coupled with that event, however, I find that the petitioner has made out a case which entitles him to the relief sought. The event to which I refer is detailed in the following short resume of the facts leading up to the separation: Some months before the parties separated, the defendant had become insanely jealous of her husband, rightly or wrongly it is unnecessary for me to decide, as in neither event would the culminating act to which I have referred have been justified. It is appropriate for me to say, however, that there is no evidence of any infidelity on the part of the petitioner, and this was not charged except by innuendo in the remarks of counsel, and the defendant expressly stated that she never thought or believed the petitioner had been untrue to her. I agree with the petitioner's conclusion on this point. Her jealous attitude manifested itself in various ways, so that living together by these parties was an intolerable existence. The intercession of the rector of the church of which the parties were members was sought by one or both, it does not matter which, with a view to effecting a reconciliation. He interviewed both parties on several occasions and, as I view it, found the husband, the petitioner, entirely tractable and willing to forgive and forget. The defendant's jealousy, however, prevented her from receiving the pastor's suggestions in the spirit of compromise and good will which in my judgment should have controlled her attitude, and the intermediary's efforts came to naught. At one of the interviews which the rector had with the defendant, she told him that she had purchased a revolver for the purpose of killing her husband and that she had on one occasion stood by the side of the bed in which her husband was sleeping with a loaded revolver in her hand, intending to shoot petitioner, but that her heart had failed her and she had reconsidered her proposed action because the thought of taking a human life was repugnant to her. She exhibited this instrument of death, with a box of cartridges, to the rector, and later he obtained it from the gardener, to whom the defendant had given it, and produced it at the trial.

This and another formidable looking weapon of the same type which she had, and which was obtained from the defendant by a physician who later examined her, were offered in evidence and marked as exhibits at the trial. The pastor informed the petitioner of these facts and advised him that for his personal safety it would be wise for him to leave his home, which he accordingly did, and took up his abode at the rectory with his pastor, where he resided for a long time. The testimony of Dr. Dougherty, the rector, with reference to this episode, cannot be doubted, and I place the greatest reliance in it. His story is amply corroborated. There was also testimony indicating the purchase by the defendant of at least one other revolver subsequent to the separation. I think, under these circumstances, the petitioner was justified in fearing for his life so long as he remained under the same roof with the defendant and that his abandonment of the defendant was fully justified.

"The defendant's attitude on the witness-stand was not such as to command the full confidence of the court, and I do not consider many of her denials and much of her testimony worthy of belief. It was claimed that all acts of cruelty on her part testified to, including the revolver episode, were condoned. The only testimony indicating any such condonation was that of the defendant, and that I do not believe. The petitioner's testimony and attendant circumstances more than overcome the testimony of the defendant on this point.

"After the separation the petitioner had the defendant examined by two very reputable physicians of the city of Newark for the purpose, evidently, of determining her sanity. This fact is seized upon by the defense as an act of cruelty on the part of the husband; but in my judgment the proceeding was fully justified and prompted by the best of motives.

"I will advise a decree for divorce for the petitioner."

*Mr. Ralph E. Lum,* for the respondent.

*Mr. Merritt Lane,* for the appellant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Berry.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ.   15.

*For reversal*—None.