## FORD MOTOR CO. v. BRADY. *
### No. 9866.

Circuit Court of Appeals, Eighth Circuit.
Oct. 12, 1934.

*Rehearing denied Dec. 4, 1934.

Staunton E. Boudreau, of St. Louis, Mo. (William M. Fitch and George H. Moore, both of St. Louis, Mo., on the brief), for appellant.

William Kohn, of St. Louis, Mo. (W. J. Blesse, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN and WOODROUGH, Circuit Judges, and DEWEY, District Judge.

SANBORN, Circuit Judge.

The appellee brought this action at law to recover for personal injuries alleged to have resulted from the failure of the appellant to comply with the statutes of Missouri relating to occupational diseases. Rev. St. Mo. 1929, §§ 13252–13266 (Mo. St. Ann. §§ 13252–13266, pp. 4803–4809). From a judgment in his favor entered upon the verdict of a jury, this appeal is taken. The parties will be referred to as in the court below.

We are first confronted with the necessity of determining what questions are properly before us. With its petition for appeal the appellant filed twelve assignments of error, which are, in substance, as follows:

I. The court erred in "refusing to give defendant's requests in the nature of a demurrer" at the close of plaintiff's evidence and at the close of all the evidence.

II. The court erred in "holding" that the verdict and judgment were supported by the law and the evidence.

III. The court erred in "holding" that there was any substantial evidence that the illness of the plaintiff and his damages were produced by his work.

IV. The court erred in refusing defendant's request No. 5, relating to the duty of the defendant to provide a physical examination once a month.

V. The court erred in charging the jury relative to such duty.

VI. The court erred "in admitting evidence as to whether or not defendant should have furnished respirators under the issues and the law in this case."

VII. "The Court erroneously charged the jury on the general propositions contained in section 13252, R. S. Mo. 1929 (Mo. St. Ann. § 13252, p. 4803), when the issues arising under said Section did not arise under plaintiff's petition, or the competent evidence in the case."

VIII. "The Court erroneously broadened the issues under the pleadings and the law: first, by erroneously admitting evidence concerning the use of substances, gases, fumes, vapors and elements other than those mentioned by name in plaintiff's petition; and, secondly, by charging the jury that the jury might consider various substances, elements, fumes, vapors, gases, etc., which did not arise from the use of the substances named in said petition, after plaintiff's evidence showed that the gases, fumes, vapors and substances which were actually used were harmless, and not injurious or poisonous, or likely to produce pul-

monary tuberculosis, of which plaintiff complained; and, next, the Court erroneously permitted the jury, under his charge, to consider the question as to whether poisonous chemicals, minerals, acids, fumes, vapors, gases or dusts were produced in said work which did not originate from the use of the poisonous basic elements charged by the petition as being constituent parts of the paint which plaintiff used, viz., did not arise from antimony, brass, copper, lead, mercury, phosphorus, zinc, their alloys or salts."

IX. The court in his charge erred in failing to limit the existence of poisonous substances to those which arose from certain metals and their salts.

X. "That under the issues, the law, and the evidence, it was manifest that the plaintiff assumed all the risks of his employment."

XI. "That under all of the issues, the law and the evidence, the plaintiff's acts contributed to the illness complained of."

XII. "The Court erred in overruling defendant's motion for a new trial."

Rule 11 of this court, relating to assignment of errors, requires that

"The appellant shall file with the clerk of the court below, with his petition for the appeal, an assignment of errors, which shall set out separately and particularly each error asserted and intended to be urged. * * * When the error alleged is to the admission or to the rejection of evidence, the assignment of errors shall quote the full substance of the evidence admitted or rejected. When the error alleged is to the charge of the court, the assignment of errors shall set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused."

■ The defendant's assignments relating to rulings upon evidence do not quote the "full substance" of the evidence, and therefore do not comply with this rule and must be disregarded. Wagner Electric Corporation v. Snowden (C. C. A. 8) 38 F.(2d) 599, 600, 601; Federal Surety Co. v. Standard Oil Co. (C. C. A. 8) 32 F.(2d) 119, 120; Lahman et al. v. Burnes Nat. Bank of St. Joseph, Mo. (C. C. A. 8) 20 F.(2d) 897, 899, 900; Schmidt v. United States (C. C. A. 8) 63 F. (2d) 390, 391; Maryland Casualty Co. v. Elmira Coal Co. (C. C. A. 8) 69 F.(2d) 616, 618.

■ The defendant's assignments of error relating to the charge of the court or to its failure to give requested instructions do not set out the portion of the charge referred to or the instructions refused. Such assignments will be disregarded. Haldane et al. v. United States (C. C. A. 8) 69 F. 819, 821; Fisher Machine Works Co. v. Dougherty (C. C. A. 8) 231 F. 910, 912.

■ The assignments which relate to the holdings of the court are obviously insufficient [E. R. Squibb & Sons v. Mallinckrodt Chemical Works (C. C. A. 8) 69 F.(2d) 685, 686], as are also the assignments that under the law and the evidence the plaintiff assumed the risk and was guilty of contributory negligence. Referring to such assignments as these, Judge Gilbert, of the Ninth circuit, in the case of Hecht v. Alfaro (C. C. A. 9) 10 F.(2d) 464, 466, said: "They bring up for review no ruling of the trial court. They do not show that at any point in the proceedings the court below committed error. Upon no question thus presented does it appear that the trial court was requested to make a ruling or give an instruction to the jury. This court has no authority to retry an action at law and render such judgment as we may think should have been rendered. We can review only rulings made by the trial court on questions brought to its attention and passed upon by it." See, also, Ayers v. United States (C. C. A. 8) 58 F.(2d) 607.

■ The assignment that the court erred in denying a new trial has now been waived, since it is not specified or argued in the appellant's brief.

■ The specification of errors, required by rule 24 of this court, is as defective as the assignment of errors. The fact is that the appellant has one assignment of errors in its record, and another assignment in its brief. We shall assume, however, that the assignment in the brief is an attempted compliance with rule 24, which requires that the brief contain:

"A separate and particular statement of each assignment of error intended to be urged, with the record page thereof. When such error is as to the admission or rejection of evidence, the statement shall quote such evidence with the rulings thereon, giving pages of the printed record where it occurs. When such error is as to the charge of the court, the statement shall quote the portion of the charge or the requested instruction refused which is claimed as error, giving pages of the printed record where it occurs."

The "assignment of errors" printed in the appellant's brief omits any reference to "the record page thereof," and does not correspond either in language or entirely in substance with the "assignment of errors" appearing in

the record. For instance, the first two assignments in the record are:

"I. The court erred in overruling and refusing to give defendant's requests in the nature of a demurrer, one at the close of plaintiff's evidence and, next, at the close of all of the evidence in the case."

"II. The court erred in holding that the verdict and judgment was supported by the law and the evidence under the issues in the case"—

while in the brief the first two assignments are:

"I. The court erroneously refused to direct a verdict for defendant."

"II. The court was in error in submitting any issue to the jury in this case."

The errors assigned or specified in the brief with respect to rulings on evidence and with respect to the charge set forth neither the evidence admitted or rejected nor the portions of the charge which are claimed to be erroneous. They do not contain the requested instructions refused or the printed pages of the record where the portions of the charge complained of or such requested instructions can be found.

It has been repeatedly held by this court that a failure to comply with rule 24 is alone ground for affirmance. City of Lincoln v. Sun Vapor Street-Light Co. (C. C. A. 8) 59 F. 756, 758; Kinser v. United States (C. C. A. 8) 231 F. 856, 861; Lohman v. Stockyards Loan Co. (C. C. A. 8) 243 F. 517, 518; City of Goldfield v. Roger (C. C. A. 8) 249 F. 39, 40; Daly-West Mining Co. et al. v. Savage et al. (C. C. A. 8) 253 F. 548; Hard & Rand, Inc., et al. v. Biston Coffee Co. (C. C. A. 8) 41 F.(2d) 625, 626; Harrow-Taylor Butter Co. v. Crooks (C. C. A. 8) 41 F.(2d) 627; E. R. Squibb & Sons v. Mallinckrodt Chemical Works (C. C. A. 8), supra, 69 F. (2d) 685, 686, 687.

While, under the circumstances, we think this court would be entirely justified in refusing to consider any of the questions sought to be raised by the appellant, we are aware that there might be some basis for an argument that the rules to which we have referred ought not to be so strictly applied as to require an appellant to set out in his assignment of errors and in his specification of errors totidem verbis his request for a peremptory instruction, because such a request is the equivalent of a motion for a directed verdict or a demurrer to the evidence. It is quite apparent that rules 11 and 24 require that, in assigning or specifying as error the refusal of the court to give any requested instruction, the instruction refused shall be set out in the assignment and specification.

However, we have decided to consider one question, and that is whether the court erred in refusing to direct a verdict for the defendant.

The substance of the plaintiff's petition is, briefly, as follows: He became an employee of the defendant in March, 1930, and remained in its employ until July, 1931. He worked in a spraying room. He was required to use, under harmful conditions, harmful paints containing antimony, arsenic, brass, copper, lead, mercury, phosphorus, zinc, their alloys and salts, and other poisonous chemicals, minerals, acids, fumes, vapors, and gases. Such process produced noxious or poisonous dusts, and was likely to produce illness or disease in employees engaged in it. He was free from disease when first employed. No warning was given him by the defendant of dangers to his health incident to his work, and the defendant negligently failed to provide him with approved and effective devices, means, or methods for the prevention of disease or illness incident to such work, and failed to post notices of dangers to health arising from the work, and instructions for avoiding them. The defendant failed to have the plaintiff examined by a competent licensed physician as often as once a month to determine whether he had an occupational disease, as it was required by law to do, and, as a result of the negligent acts of the defendant, the plaintiff contracted tuberculosis, his health was permanently impaired, and he became wholly incapacitated, all to his damage in the sum of $65,000.

The defendant by its answer denied liability, and asserted the contributory negligence of the plaintiff in failing to use the respirators furnished for his protection and his assumption of risk.

The court submitted to the jury two propositions, which may be stated briefly as follows: (1) Did the defendant fail to comply with section 13252 requiring approved and effective devices, means, or methods for the prevention of industrial or occupational diseases incident to the work, trade, or process in which the plaintiff was engaged; and, if so, was that the proximate cause of plaintiff's illness? (2) Did the defendant fail to comply with section 13255 requiring a physical examination at least once a month; and, if it did, was its failure in that regard the proximate cause of plaintiff's illness?

252

The jury returned a verdict in favor of the plaintiff for $5,000.

The pertinent sections of the statutes (Mo. St. Ann. §§ 13252–13255, pp. 4803–4805) are:

"§ 13252. *Employer to provide protection to employees from diseases.* That every employer of labor in this state engaged in carrying on any work, trade or process which may produce any illness or disease peculiar to the work or process carried on, or which subjects the employee to the danger of illness or disease incident to such work, trade or process, to which employees are exposed, shall for the protection of all employees engaged in such work, trade or process, adopt and provide approved and effective devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work, trade or process.

"§ 13253. *Articles considered dangerous to health.* The carrying on of any process, or manufacture, or labor in this state in which antimony, arsenic, brass, copper, lead, mercury, phosphorus, zinc, their alloys or salts or any poisonous chemicals, minerals, acids, fumes, vapors, gases, or other substances, are generated or used, employed or handled by the employees in harmful quantities, or under harmful conditions, or come in contact with in a harmful way, are hereby declared to be especially dangerous to the health of the employees.

"§ 13254. *Employees to be furnished with clothing—respirators to be used while at work.* Every employer in this state to which this article applies shall provide for and place at the disposal of the employees so engaged, and shall maintain in good condition without cost to the employees, working clothes to be kept and used exclusively by such employees while at work and all employees therein shall be required at all times while they are at work to use and wear such clothing; and in all processes of manufacture or labor referred to in this section which are productive of noxious or poisonous dusts, adequate and approved respirators shall be furnished and maintained by the employer in good condition and without cost to the employees, and such employees shall use such respirators at all times while engaged in any work productive of noxious or poisonous dusts.

"§ 13255. *Employees to be examined monthly by physician.* Every employer engaged in carrying on any process or manufacture referred to in section 13253 shall, as often as once every calendar month, cause all employees who come into direct contact with the poisonous agencies or injurious processes referred to in section 13253, to be examined by a competent licensed and reputable physician for the purpose of ascertaining if there exists in any employee any industrial or occupational disease or illness or any disease or illness due or incident to the character of the work in which the employee is engaged."

The defendant argues that in his petition the plaintiff limited himself to a cause of action under sections other than section 13252 by alleging that the paint which he used contained the poisonous substances referred to in section 13253. The following allegations of the petition rebut this contention:

"That the work, trade or process of so painting, spraying and varnishing automobile bodies as carried on by defendant as aforesaid, was likely to produce in employees engaged therein illness or disease peculiar to such work, trade or process thus carried on, and which subjected such employees, including plaintiff, to the danger of illness or disease incident to such work, trade or process, to which such employees were exposed. * * *

"Plaintiff further states that defendant, during the whole course of plaintiff's employment as aforesaid, carelessly and negligently failed to adopt and provide plaintiff with approved and effective devices, means or methods for the prevention of industrial or occupational disease or illness incident to said work, trade or process. * * *"

Clearly, the petition charges a failure of the defendant to comply with either section 13252 or section 13255. Hence, if there was substantial evidence to sustain the plaintiff's asserted cause of action under either or both of the sections, the defendant was not entitled to a directed verdict.

The evidence introduced by and on behalf of the plaintiff may be briefly summarized as follows:

The plaintiff had a physical examination by the defendant's doctor in March, 1930, before he went to work, and was found to be in good health. He went to work in the spraying room, where the priming coat was sprayed by paint guns upon the bodies of the automobiles manufactured by the defendant. Until about January, 1931, he was furnished with respirators known as the Willson and the Devilbiss respirators, which gave him efficient protection from the vaporized paint. Thereafter he was furnished with a mask known as the Hubbell respirator or Hubbell mask, which was inefficient. He complained

to the superintendent of the paint department about this mask, which allowed the paint to get into his nose and mouth so thick as to clog them with paint and coat his teeth, and occasionally required him to swab out his mouth and nose with an oily rag. Sprayers were working in the booth for two weeks and were off one week when he first began work. That practice was later discontinued. He first felt ill in January or February, 1931, when he had stomach cramps, pains, and loss of appetite. He later had chills and fever, and in July, 1931, he was examined by a physician of his own choosing, who diagnosed his condition as tuberculosis. Since that time he has not worked and has been confined since February 17, 1932, in the Koch Hospital. He weighed 150 or 160 pounds when he started to work for the defendant, but only 129 or 139 pounds when he went into the hospital.

Leonard Toelle, who worked with the plaintiff in the spraying booth, testified that they used the Hubbell masks for about four months; that he (Toelle) inhaled the paint vapor while using these masks; that it made him sick and caused him to lose weight; that sprayers were furnished physical examinations after the plaintiff left, but not before.

Gordon Jones, the third man in the spraying booth, testified that the Hubbell respirator was not adequate protection; that the sprayers complained to the plant superintendent about it; that he (Jones) lost appetite and weight while using the Hubbell mask; that his lungs burned; that they used the mask about five months.

One of the doctors who testified for the plaintiff stated that the inhalation of the vaporized paint by the plaintiff was the cause of his tubercular condition.

Another doctor, the resident physician of Koch Hospital, where the plaintiff was confined, stated that he believed that the inhalation of the paint by the plaintiff in connection with his work was the activating cause of the tuberculosis.

There was testimony that, if monthly examinations had been provided, they would have brought to light a tubercular condition before it was far advanced.

It was shown by the plaintiff's testimony that the paint was not composed of substances recognized as chemically poisonous. The pigment consisted of 45 per cent. iron oxide, 4 per cent. carbon, 38 per cent. calcium carbonate, and 12 per cent. insoluble silicates. The liquid composition was 26 per cent. vegetable oils, 10 per cent. gums, 55 per cent. mineral spirits, and 6 per cent. turpentine. One of the plaintiff's doctors testified that calcium carbonate, while nontoxic, is an abrader, and when inhaled might activate a latent lesion of tuberculosis; that turpentine is an irritant to the mucous membrane; that mineral spirits, or benzene, in his opinion, are toxic and produce certain toxic symptoms; that the inhalation of all these compounds together might very readily, if they reached the finer bronchioles of the lung, activate a pulmonary tuberculosis, and could have produced a condition of irritation which would have been a fertile field for the bacilli of tuberculosis.

Taking that view of the plaintiff's evidence which is most favorable to him, with all the inferences which may properly be drawn therefrom, we think that it does appear that the vapor, mist, or spray incident to the work, when breathed by those employed in the work might (and did so far as plaintiff was concerned) produce illness or disease which was as peculiar to the work or process carried on as was the presence of the vaporized paint itself; that there were approved and effective devices which could have been provided for the protection of the plaintiff and the other employees engaged in such work, but that the defendant did not provide such effective devices except for a time, and thereafter substituted an ineffective device; and that it was the failure of the defendant in this regard which caused the plaintiff to have tuberculosis. There was therefore, we think, sufficient evidence to make a case for the jury under section 13252. The fact that no poisonous dusts were present, so that no duty to furnish respirators under section 13254 existed, would not relieve the defendant of its obligations under section 13252.

The conclusion which we have reached we think is in harmony with the views which have been expressed in similar cases arising under these statutes. See Wagner Electric Corporation v. Snowden (C. C. A. 8) 38 F.(2d) 599; Cropper v. Titanium Pigment Co., Inc. (C. C. A. 8) 47 F.(2d) 1038, 78 A. L. R. 737; St. Joseph Lead Co. v. Jones (C. C. A. 8) 70 F. (2d) 475. See, also, Boll v. Condie-Bray Glass & Paint Co., 321 Mo. 92, 11 S.W.(2d) 48, 54; Dodd v. Independence Stove & Furnace Co., 330 Mo. 662, 51 S.W.(2d) 114, 117, 118; Plank v. R. J. Brown Petroleum Co., 332 Mo. 1150, 61 S.W.(2d) 328.

We are satisfied that the court below did not err in refusing to direct a verdict for the defendant.

The judgment is therefore affirmed.