## Schuster v. Caldwell.

Nov. 10, 1939.

Stanley Chrisman for appellant.

Sawyer A. Smith for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF— Affirming.

The appellant, Grover C. Schuster, owned 50 acres of land in Kenton County, Kentucky, which he had mortgaged in August, 1934, to the Federal Land Bank to secure a loan of $1,800. He defaulted in his payments to the Federal Land Bank and the bank was threatening foreclosure proceedings. In September, 1936, the debt of the Federal Land Bank, plus interest and past due taxes, amounted to $1,994.51. Appellant applied to appellee for a sum of money sufficient to pay the above indebtedness, and after some negotiations and investigation, appellee furnished appellant the money or paid same to the Federal Land Bank for appellant, and at the same time appellant executed to appellee a deed to the land. Appellant remained in possession of the land and used it apparently as his own until December, 1937, at which time a dispute arose between appellant and appellee in regard to certain repairs appellant was making on a barn on the premises. Appellant, claiming that the deed was intended to be a mortgage to secure appellee for the sum of money furnished him, told appellee that he had made arrangements for the money to pay him and demanded that appellee reconvey the land to him, appellant. Appellee denied that the deed was intended to be a mortgage to secure the loan and told appellant that he purchased the land and refused to reconvey the land to appellant. Appellant then brought this action in the Kenton Circuit Court seeking a decree of the court declaring the deed to be a mortgage and that appellee be required to reconvey the land to him.

Appellee filed his answer denying the allegations of the petition and pleaded affirmatively that the deed was what it purports to be on its face, that is, a sale and purchase of the land, and that he was the owner of same by virtue of the deed. By subsequent pleadings, the issue was joined and the evidence taken and the chancellor

held and adjudged that the evidence was not sufficiently clear and convincing to establish appellant's contention that the deed was intended to be a mortgage and dismissed appellant's petition. This appeal follows.

Appellant testified that the bank was pressing him for payment and he contacted appellee and they made two trips to see the Federal Land Bank agent and ascertained the exact amount of the indebtedness against the land, and appellee agreed to furnish him the money or take care of the indebtedness for him; that he wanted to give appellee his note and appellee said, "Make it a deed." He was asked and answered as follows:

"Q. What did he say with reference to the deed? A. Well, nothing more than to make it a deed.

"Q. Were you supposed to have the right to sell the property? A. I was supposed to have the right to sell and I was to pay him back. I was to have the right to sell some of the ground and pay the deed off."

He further testified about the dispute or controversy in regard to repairing the barn, and said:

"We were putting up some braces and one of them didn't fit. He started raving around about it and I told him I would get his money for him by the first of the year. He said, 'get it,' and he would get out of the picture or something to that effect."

He further testified that he saw appellee later and told him he had made arrangements to get the money and asked him to give him the exact amount and appellee said he did not have the time to figure it up. He said he had remained on the land since the deed was made and still had it under his control.

William Mendenhall was introduced as a witness for appellant, and testified tnat he asked appellee if he would be interested in selling a part of the land and appellee said that it would be a matter for him, Mendenhall, to discuss with appellant. The witness said that he could not repeat the exact words, but said in effect that he could not or did not mean to dispose of the property unless it was agreeable with the appellant. Appellee admitted that he had the conversation with Mendenhall and said that Mendenhall asked him if he would sell

a part of the place and he told him that he would and Mendenhall said that if he would make him a price he would consider buying the place.

Appellant introduced a number of witnesses to show the value of the land and according to the evidence of these witnesses, it appears that the land was worth $5,000 or $6,000. It appears, however, that the witnesses were considering the value of the land at the time they testified, which was in 1938, but their evidence was not confined to the value of the land in September, 1936, when the deed was executed.

The evidence of appellee was in direct conflict to that of appellant. According to his evidence, the transaction was intended to be a sale and purchase of the land without any understanding or agreement between the parties that appellee was to reconvey the land to appellant, if and when appellant paid to appellee the amount of money furnished him. Appellee admitted that appellant remained in the possession of the land for the following year after the deed was made, but said that it was so agreed and understood at the time of the making of the deed. Appellee further testified that after the deed was made and during the time appellant was in possession of the land, he, appellee, took certain livestock to the land and also made various repairs and improvements thereon amounting to the sum of $373.87.

J. L. Thornton, a notary public, who wrote and took acknowledgment of the deed, testified that he prepared the deed at the request of appellant. He said he asked appellant if he understood what he was signing and if he wanted any reservations made, and appellant said he did not, and that he knew what he was signing and understood that it was a deed of conveyance.

One Mr. Huff testified that he worked for Mr. Caldwell, appellee, in repairing the barn on the premises. He was asked and answered as follows:

"Q. Did you ever hear Mr. Schuster say anything about a deed? A. They had some sort of an argument, one day last year. Mr. Schuster was standing in the kitchen. He was trying to build a fire and they were talking about the place and Grover (appellant) said he had a warranty deed.

"Q. Said who had a warranty deed? A. Mr. Caldwell, and that it was as good as gold. They

were talking and it seemed like Mr. Caldwell couldn't get Grover to do much. He said, 'I am losing money, you are not making any improvements on the place you agreed to do.' Mr. Caldwell asked Grover if he wanted notice to get out of the house and Grover said, 'No I will get out. I won't cause you any trouble.' They were talking and he said, at the time, that he didn't think the place was worth any more than what he got.

"Q. Schuster said that? A. Yes."

Huff further testified concerning the work he did on the premises for appellee and that appellee paid him for the work which included the work or repairs being made on the barn at the time of the dispute between appellant and appellee, referred to above. He said that it was his understanding that appellant was making the improvements for appellee and had agreed to build the barn.

Appellee was recalled and testified that appellant agreed to build the barn and perhaps make certain other repairs in consideration of the use of the premises for the year following the execution of the deed, but said that appellant failed to build the barn and he had to build it himself. Appellant was recalled in rebuttal and denied that there was any agreement for him to stay on the premises for a year or that he was to build the barn for that privilege, but said he agreed to help appellee build the barn when he let him have the money, until he could sell some of the land to pay appellee. He further testified that when the deed was prepared, he asked Mr. Thornton "if he could put some kind of a clause in there and he said he could not put it in the deed." He said he knew the difference between a deed and a mortgage, but that he did not have any fear of Mr. Caldwell, since he had known him for a length of time and that they had always been friends. Mr. Thornton was recalled in rebuttal and denied that appellant intimated to him that he wanted any reservation in the deed and that he particularly asked him if there were any reservation or any clause of any kind and he said there was not and that he understood that it was a deed. Thornton said he had been writing deeds and mortgages for many years and had had no trouble about any instrument that he had prepared and he wanted appellant to understand what he was signing and told him it was a general warranty deed.

It is thus seen from the above resume of the evidence that it is very conflicting, and that reasonably prudent minded people might differ as to the truth of it. It is the established rule that a deed regular on its face, will not be adjudged a mortgage in the absence of clear and satisfactory proof showing that the instrument was intended to be a mortgage. Stokely et al. v. Flanders, Ky., 128 S. W. 608; Gish v. Terrell, 266 Ky. 424, 99 S. W. (2d) 168; 41 C. J., page 356, Section 124.

In the conflict of evidence presented in this record it is difficult to say which side, if either, is favored by the preponderance of the evidence. Appellant and appellee squarely contradicted each other and the facts and circumstances testified to by other witnesses introduced by the respective parties is also contradictory. Some of them tend to corroborate appellant and others tend to corroborate appellee.

In view of the rule that this court will not reverse a chancellor on the finding of fact when the evidence is such that reasonably prudent minded persons might differ or draw different conclusions as to the truth of it, and, that the courts will not adjudge a deed regular on its face, to be a mortgage, unless the evidence is clear and convincing, we find ourselves unable to hold that the chancellor erred in his finding of fact and conclusions reached thereon.

Wherefore, the judgment is affirmed.