**AMERICAN INS. CO. v. SCHEUFLER, Successor, Superintendent of Insurance, et al.**

No. 12092.

Circuit Court of Appeals, Eighth Circuit.

July 10, 1942.

William Marshall Bullitt, of Louisville, Ky., and D. A. Murphy, of Kansas City, Mo. (E. R. Morrison and Homer H. Berger, both of Kansas City, Mo., on the brief), for appellants.

Charles L. Henson, of Jefferson City, Mo. (Lawrence Presley, of St. Louis, Mo., and Preston Estep, of Monett, Mo., on the brief), for appellees.

C. C. Madison, of Kansas City, Mo., James T. Blair, of St. Louis, Mo., and P. L. Edwards, of Kansas City, Mo., amicus curiae.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

There are here 137 suits consolidated for the purpose of appeal and presented on one consolidated record. The decrees appealed from are identical in form except as to the names of the parties. They modify earlier decrees entered on stipulation of the parties in the same suits on February 1, 1936, and they direct a distribution to plaintiffs' policyholders of certain impounded funds. Some statement of the underlying facts is essential to an understanding of the issues here presented. In 1930, 139 insurance companies filed 137 separate injunction suits against the Superintendent of Insurance and the Attorney General of Missouri to protect a proposed increase in insurance premium rates. On motions, interlocutory injunctions were granted upon condition that the companies might collect the increased rates pendente lite, but must deposit the amount of the increase so collected with a custodian of the court to await the ultimate outcome of the suits. It was pursuant to these injunctional orders that the funds were impounded, and at the time of the entry of the decrees complained of these funds had reached the aggregate amount of approximately $10,000,000. See O'Malley v. United States of America, 8 Cir., 128 F.2d 676, opinion filed June 1, 1942.

Following the entry of these decrees, the custodian distributed a substantial part of the funds as directed. On May 29, 1939, the then Superintendent of Insurance presented to the court motions for citations against each of the insurance companies, directing plaintiffs "to show cause, if any they have, why said decrees of this court made February 1, 1936, should not be set aside to the extent of the distribution thereof, and that such decrees be so modified as to assure an ultimate distribution to policyholders of the entire fund unlawfully collected from them * * *." The motions charged that the stipulation and agreement for settlement of the pending suits had been procured by bribery, and that the decrees entered thereon had been obtained by fraud upon the court, and that the orders for the distribution of the funds were the direct result of fraud practiced upon the court. On presentation of these motions for citation, all the insurance companies appeared by counsel and indicated their willingness to return to the custodian all funds distributed to them, disclaiming any right or desire for fruit or advantage from the decrees so challenged, but reserving the right to litigate what further action the court should take after their return of the funds to the custodian. Thereupon the court entered orders directing the plaintiffs to restore to the court's custodian all of the impoundings paid to the insurance companies and their representatives under the decrees of February 1, 1936. At the same time the court entered orders to show cause directing the insurance companies to show cause why all impoundings should not be distributed to the proper policyholders and the causes dismissed at the cost of the companies. The companies complied with the orders of restitution. They filed answers to the orders to show cause, in which they in effect disclaimed all advantage in anywise arising from the decrees and settlement of February 1, 1936; alleged that they had either restored all benefits derived under the decrees, or would do so within the time limited by the court's orders, and offered to consent to a vacation of the decrees and a nullification of the settlement and the rate orders; pleaded that they were entitled to a decree investing them with all monies impounded; that if the defendants refused to nullify the decrees then they should be held not to be aggrieved thereby nor by the acts upon which the same rest, in which event the decrees should remain in full force and effect, and all sums adjudged to the respective parties by the decrees should be distributed and paid as so provided. They asked that defendants show cause why the court should not proceed with the determination of the merits of the controversies between plaintiffs and defendants. The Su-

perintendent of Insurance filed a motion to strike the answers. The court then referred the matter to a special master to take testimony and to analyze and summarize the testimony as to the conduct of the parties in the suits leading up to the action of the court ordering distribution of the impounded funds, and as to any connection therewith of any agent of plaintiffs authorized to act, and as to the knowledge of any authoritative officer or officers of the plaintiffs as to the acts of any such agent. On this reference the master took some 1,600 printed pages of testimony which he filed with his report. The cases were then elaborately briefed and orally argued, and, as stated by counsel for appellants in their brief, "submitted on final hearing regarding the retention or disposition of the $8,000,000.00 impoundings in the court's custody."

The court made findings of fact and conclusions of law in each suit in favor of the Superintendent of Insurance, representing the policyholders, and on such findings of fact and conclusions of law entered decrees adjudging that, "The decree heretofore entered in this action on February 1, 1936, is set aside and modified in so far and only in so far as it directs payments of 80 per centum of the impounded funds to the plaintiff * * *. In place of such direction the custodian is directed and ordered to pay promptly to the policyholders contributing thereto the respective contributed portions of the returned funds now in his custody with interest provided for therein." Motions for new trial having been interposed by plaintiffs and denied by the court, these appeals followed.

■ While appellants set out eleven points as being relied upon by them for reversal, they in fact in their brief discuss only the first eight of these points. Points 9, 10 and 11 are therefore abandoned and will be given no further consideration. Brown Sheet Iron & Steel Co. v. Maple Leaf Oil & Refining Co., 8 Cir., 68 F.2d 787.

■ Appellees have with their brief filed a motion to dismiss the appeal for failure to comply with the rules of this court. Appellants' brief was not filed within the time limited by the rules of this court, but it was filed before any motion was made to dismiss the appeal. The default was therefore cured before any attempt was made to take advantage of it. It is, however, urged that the brief does not comply with the rules of

this court in that it does not set out a separate and particular statement of each point relied upon and intended to be urged, and that the first ten points allege error in the "holding of the court," which has reference only to the opinion of the court. Other criticisms are directed to the brief.

■ Each of the points relied upon for reversal charge that "the court erred in holding." They do not directly attack the findings of the court nor do they make any specific reference to the court's conclusions of law. Neither do they give any reference to the page of the record where any finding of fact, conclusion of law, or other ruling or action of the court complained of is to be found. They seem to be directed to the opinions of the court handed down in deciding the case on its merits and on denying motions for new trial. The brief seems likewise to be directed to these opinions, as it abounds in references to them. By way of example we quote the following references: "Nevertheless, the three-judge Court's 60-odd page Opinion on the Merits absolutely ignored, and never referred to, the Six Companies." Again, "In its 56-page Opinion Denying the Motions for a New trial, the three-judge Court devoted nine pages to the cases of the Six Companies; and denied the Six Companies a new trial upon two apparently independent grounds, etc." Again, "The three-judge Court devoted about four pages of its opinion denying a new trial to an attempt to prove that Street made the last payment ($10,000) to Pendergast after November 17. Our Parallel Column Comment (p. 133–144) is a critical demonstration that the three-judge Court is absolutely in error." Appellants' Brief, p. 57. Again, "That issue is a convenient one by which to test, once and for all, the accuracy of the three-judge Court's opinion on material matters of fact." Again, "In opposition to the three-judge Court's purely speculative argument about Street's psychology, custom, and supposed lack of funds, we submit the following indubitable evidence, which is more fully set forth in our Parallel Column Comment." Appellants' Brief, p. 58. Again, "These facts completely demolish that part of the three-judge Court's opinion against the Six Companies * * *. That opinion was based on the three-judge Court's 'convinced' belief, etc." Appellants' Brief, p. 64. On page 69, appears the following heading, "Response to the three-judge Court's opinion re the Six Companies." Again, "The

three-judge Court held that when on March 23–24, 1936, Mr. Erskine tendered the 11%, and requested 5% for expenses, 'the obvious duty of these· six companies was to refuse to contribute or to receive any proceeds (the 11% payments) from such transactions, to return all payments made under the decree, to disavow all benefits from the decrees and promptly to bring the matter to the attention of this court for any action it might think proper.' (Vol. A p. 483; Parallel Column Comment p. 147). The three-judge Court thus held that the Six Companies should have, ipso facto, refused to contribute the 5%, etc." Appellants' Brief, pp. 79, 80. These references are to the opinions of the court. Again, "In denying their motions for a new trial the three-judge Court said, etc." After making further reference to the opinion of the court on denying motion for new trial, the brief continues, "We challenge that holding, etc." (brief, p. 82), indicating that the "holding" is that found in the court's opinion and not in its findings. Again, on page 90 of the brief, referring to the court's opinion, it is said: " * * * the three-judge Court cites three cases and Corpus Juris, etc." Again, on the same page, "The three-judge Court's opinion is practically devoid of authorities." On page 42 of the brief appears the following heading, "Parallel Column Comment upon the three-judge Court's two opinions below." These references, picked at random, simply illustrate that the appellants' points, formerly assignments of error, are directed to the opinions of the court and not to its findings of fact or conclusions of law. They refer to the reasons given in the court's opinion for the conclusions reached. This view is further strengthened by the fact that there has been lodged with the clerk, and appellants have asked leave to file, a printed pamphlet entitled in this case, designated as "Parallel Column Comment." The pamphlet contains 152 pages measuring nine by twelve inches, and in their brief reference is frequently made to it. These points relied upon do not meet the requirements of the rules or decisions of this court. The party complaining of the action of the lower court must specifically point out what action or ruling is objected to, and a point is not sufficient which simply invites the court to search the record generally for error. Jones v. Futrall, 8 Cir., 75 F.2d 418; E. R. Squibb & Sons v. Mallinckrodt Chemical Works, 8 Cir., 69 F.2d 685; Ford Motor Co. v. Brady, 8 Cir., 73 F.2d 248; Ed S. Michelson, Inc., v. Nebraska Tire & Rubber Co., 8 Cir., 63 F.2d 597; Southern Surety Co. v. Lee County Bank, T. & T. Co., 8 Cir., 36 F.2d 220; Miller-Crenshaw Co. v. Colorado Mill & Elevator Co., 8 Cir., 84 F.2d 930; Loeb v. Trustees of Columbia Tp., 179 U.S. 472, 21 S.Ct. 174, 45 L.Ed. 280; Stone v. United States, 164 U.S. 380, 17 S.Ct. 71, 41 L.Ed. 477.

We are not here concerned with the written opinions of the trial court, as the statements therein may not be used to ascertain the evidence or the facts, or to control or modify the findings of fact upon which the judgment is based. Loeb v. Trustees of Columbia Tp., supra; Stone v. United States, supra. So far as the points are directed to the holding of the court as reflected in its opinions, they present no question for our determination. Ford Motor Co. v. Brady, supra; Jones v. Futrall, supra. The brief is not in conventional form but was prepared in disregard of the rules of this court. There has been no motion to strike the brief from the file, however, and we do not believe the appeals should be dismissed but that the defects would warrant an affirmance of the judgments appealed from. E. R. Squibb & Sons v. Mallinckrodt Chemical Works, supra; Ford Motor Co. v. Brady, supra. In view of the importance of the case, however, we have made a careful study of the voluminous record, particularly the report of the special master, and have decided to consider the questions inhering in the record which seem to us determinative of the issues. It is difficult to determine just what questions are intended to be presented, and the merits or demerits of such questions have been obscured by an avalanche of redundant, irrelevant and immaterial matter, among which is a pamphlet designated "Parallel Column Comment" (above referred to); a similar pamphlet designated "Outline of Mr. Bullitt's Oral Argument" (submitted in the lower court); a 33-page printed brief submitted to the lower court in these causes; a 113-page brief entitled in the same suit, designated "Brief for the Fire Insurance Companies"; a 53-page brief entitled in the same case, designated "Suggestions of Plaintiff Insurance Companies in Support of their Motions for New Trial"; a 6-page brief entitled in the same suit, designated "Insurance Companies' Reply to Memorandum for Defendant Lucas"; a 13-page brief entitled in the same suit, designated "Plaintiffs' Reply to Counter Suggestions of Defendant Lucas, Superintend-

ent"; a pamphlet entitled in this court, containing 118 pages, designated "Reprints of" Attorney Milligan's statement on Pendergast's plea of guilty, Attorney Milligan's statement on O'Malley's plea of guilty, opinion in United States v. Pendergast, D.C., 28 F.Supp. 601, Judge Otis' charge to the grand jury, indictment of Pendergast for obstructing justice, indictment of Pendergast for defrauding the United States, information against Pendergast for contempt of court, three-judge court's original opinion, three-judge court's opinion denying new trial, Assistant United States Attorney's statement on Pendergast's contempt trial, stipulation of facts in Pendergast's contempt trial, opinion in United States v. Pendergast, D. C., 39 F.Supp. 189, and "Chronological History of Missouri Rate Litigation," all of which is urged upon us in addition to the record properly before us consisting of five printed volumes of transcript of the record, containing in the aggregate 2796 printed pages.

■■ It would seem to be important to ascertain at the outset just what action was taken by the court in entering the decrees from which the appeals are prosecuted. No question is here raised with reference to the jurisdiction of the court, but it is claimed that the court erred in exercising that jurisdiction. No complaint is made of the orders of the court requiring the insurance companies to restore the funds which they had received under the judgments of February 1, 1936. These orders were not only consented to but complied with. The decrees modified the decrees of February 1, 1936, in so far only as they affected the impounded funds. Instead of directing a payment of 80 per cent of these funds to the insurance companies, they directed payment of the entire restored fund to the policyholders. After the funds had been restored to the custody of the court, manifestly some disposition had to be made of them. They had originally been collected from the policyholders, not by reason of any legal rate schedule, but by virtue of injunctions which were entered permitting the collection of an increased premium rate on condition that the amount of the increase be deposited in court to await final hearing. It is worthy of note that these interlocutory injunctions went further than merely preserving the status quo until final hearing. They in effect permitted taking this premium money from one party to the suit and

transferring it to the custodian of the court. This conditional relief was granted in the discretion of the court. There was no right in the insurance companies to collect this increase in premium. Its collection pendente lite was not essential to preserve the status quo of the matter in controversy, but the injunctions rather disturbed that status. The suits might well have been prosecuted without the granting of the interlocutory injunctions. Having granted these injunctions, the court had a right to modify or dissolve them. The plaintiffs acquired no perpetual or vested right in the remedy, but the injunctional orders were ambulatory in character, going forward with the progress of the litigation. They were directed to the future, were executory and continuing. When these funds were restored to the custody of the court, the suits had been dismissed without any determination that the funds belonged to the plaintiff. Unless there was such an adjudication, they manifestly belonged to the policyholders. The funds were in the hands of the court by consent of all the parties. Plaintiffs did not move to set aside the judgments nor reinstate the suits, nor did they file any bills for review, and the only question here presented is whether the lower court was justified in ordering a distribution of these funds to the policyholders. Even had the injunctions remained in force and effect, the court, in the exercise of its discretion, had the inherent power to set them aside or modify them. But if we view the situation as presenting a case in which the injunctions passed out of existence with the dismissal of the suits, then the court had in its custody, with the consent of all the parties, these funds which had been collected from the policyholders without any warrant of law except the injunctional orders. In this situation, the plaintiffs were not in position to assert any rights to these funds, and as said by the Supreme Court of Missouri in American Constitution Fire Assur. Co. v. O'Malley, 342 Mo. 139, 113 S.W.2d 795, 804.

"Although the impounded fund was accumulated without authority of law, and in a cause of which the court did not have jurisdiction, yet, since the court has the fund in its custody, it is its duty to protect it and see that it reaches the rightful custodian thereof."

Here, there is no challenge to the court's jurisdiction, but it did have these funds to which plaintiffs were not in position to as-

sert any claim, and to which, in the absence of such claim, the policyholders were clearly entitled.

Quite aside from these considerations, the court has found on the evidence submitted that the plaintiffs were not in court with clean hands because of their relation to or connection with the fraud confessedly committed upon the court in securing the distribution of the impounded funds by the orders and decrees of February 1, 1936. The findings of the court are presumptively correct and should not be set aside unless clearly erroneous. Federal Rules of Civil Procedure, rule 52, 28 U.S. C.A. following section 723c; United States v. Commercial Credit Co., 286 U.S. 63, 52 S.Ct. 467, 76 L.Ed. 978. As already observed, they are not directly challenged. In this state of the record we need not discuss the question of the sufficiency of the evidence; neither need we consider the question as to whether the findings are sufficient to sustain the judgments, that question not being raised. It was the province of the trial court to determine the weight of the evidence and to draw such inferences as the direct evidence and circumstances reasonably warranted. We have examined the voluminous record with great care, and particularly the report of the special master, consisting of 679 pages, and we are of the view that the findings of the court on this issue are sustained by abundant evidence. If, therefore, it might be said that the plaintiffs had inferentially asked for a reinstatement of their suits, they were precluded from securing such relief, first, because the court would first be required to set aside the judgments of dismissal. These were procured through fraud in which the plaintiffs participated. They could not, therefore, seek to set aside a judgment which had been secured by their own fraud, as they could not be permitted thus to take advantage of their own wrong. Second, if the judgments had been set aside, still they were not entitled to proceed with their original suits, because while they had commenced these suits with clean hands, they had been guilty of misconduct with reference to these very suits, and a litigant coming into a court of equity must keep his hands clean throughout the litigation. Little et al. v. Cunningham, et al., 116 Mo.App. 545, 92 S.W. 734; Gluck v. Rynda Development Co., 99 N.J.Eq. 788, 134 A. 363, affirmed 100 N.J.Eq. 554, 135 A. 917; Kem Products

Co. v. Levin, 117 N.J.Eq. 560, 177 A. 77; Pfender v. Pfender, 103 N.J.Eq. 367, 144 A. 332.

The judgments appealed from are therefore affirmed.