**MAAS v. MAAS' ADM'R et al.**

Court of Appeals of Kentucky.
Dec. 5, 1952.

Rehearing Denied March 20, 1953.

Leon J. Shaikun and Carl K. Helman, Louisville, for appellant.

R. Lee Blackwell and Henry J. Tilford, Louisville, for appellees.

WADDILL, Commissioner.

The appellant, John C. Maas, brought this action in the Chancery Branch of the Jefferson Circuit Court under Section 639 a–1 et seq. of the Civil Code of Practice for a declaration of rights concerning title to certain property known as Tucker's Lake. Appellant claims that a certain instrument dated February 11, 1941, was a mortgage, while appellee maintains it was a deed. The Chancellor heard proof on this issue but held that appellant was barred from relief in equity by reason of unconscionable conduct amounting to "unclean hands."

The first question to be decided is whether or not the misconduct of appellant has been sufficiently connected with the cause of action so as to prohibit his seeking equitable relief.

On December 4, 1940, John Maas was arrested for the shooting of his wife and on February 11, 1941, he executed an instrument, on its face a deed absolute, of the

Tucker's Lake property to his father as security for a loan of $13,500 to conduct his defense to the criminal charge and several anticipated civil suits. John was sentenced to LaGrange Penitentiary to serve 21 years upon a plea of guilty to voluntary manslaughter. John's father died without having recorded the deed to Tucker's Lake and it was after his death recorded at the request of his wife, to whom it had passed under a general devise of Mr. Maas' realty under his will.

After John was imprisoned, his brother, Stanley Maas, assumed the management of the Tucker's Lake property which was operated as a commercial swimming pool. In prison, John became disturbed by rumors that Stanley opposed his parole, and at the way Stanley was managing the Tucker's Lake property. The relations between the brothers became strained at first, and later, hostile.

In 1947, shortly after John filed his original petition in this action, John's mother conveyed Tucker's Lake to Stanley. Sometime after the death of his father, John began to write anonymous letters to Stanley's friends and customers which contained serious and violent charges against Stanley.

After his release from prison in December, 1948, John went one evening to his mother's home where the so-called "night of Terror" took place. That night John let it be known that he was waiting for Stanley to appear. John had a gun and raved that he was going to shoot Stanley if he did not relinquish his claim to Tucker's Lake. John cut a telephone extension wire and directed threatening and abusive language toward his invalid mother and her nurse. He left the house about 3:00 a. m. His mother was removed to a hospital several days later and died soon thereafter. The Chancellor found that the purpose of these actions was to cause Stanley to execute a deed conveying Tucker's Lake back to John.

"He who comes into equity must come with clean hands," is a maxim as old as equity itself, but the application of the rule is confined to misconduct in regard to, or connected with, the subject matter in litigation, so that it affects the equitable re-

lations subsisting between the parties, and arising out of the transaction. Dunscombe v. Amfot Oil Co., 201 Ky. 290, 256 S.W. 427. Here the right sought to be enforced is the right to have what is a deed in form declared a mortgage in substance, and this right existed between John Maas and his father, through whom Stanley derived his claim, prior to the doing of any of the actions of unconscionable conduct which appellee claims now bars appellant of relief in equity.

Appellee claims that one should not be permitted to ask a court to do for him what he has tried to do himself by inequitable or illegal self-help methods. Whether or not the clean hands doctrine should be applied to this situation has never been decided by this Court. The cases passing on the question are not numerous, and there is a conflict of authority.

In Chute v. Wisconsin Chemical Company, C.C., 185 F. 115, 118, a suit for patent infringement where the plaintiff wrote a letter which was interpreted by the defendant as an attempt to obstruct justice by obtaining false testimony, or by suppressing testimony, the court said:

"Equity is supposed to guard the portals of her jurisdiction jealously. No cause of action will be proceeded with which has become infected with fraud or other iniquity, it matters not when or how the facts are brought to the attention of the court. The distinction is, however, fundamental that the transgression which falls within this maxim must have infected the cause of action, so that to entertain it would be violative of conscience. It does not reach a case where the cause of action is meritorious, and where, subsequent, to suit brought, the complainant has been guilty of reprehensible conduct, but which does not go to the cause of action. Woodward v. Woodward, 41 N. J.Eq. 224, 4 A. 424; Liverpool, etc., Co. v. Clunie, C.C., 88 F. 160, 170.

"It is contended by defendant that this letter is an effort to impede and corrupt the due course of justice. If this be true, a plain, adequate remedy

would be found under section 5399, Rev.St. [18 U.S.C.A. § 1503.] Under such indictment the court would have the necessary machinery to determine the gravity of the offense, and to make the punishment fit the crime."

In Joseph S. Baum Mercantile Company v. Levin, 189 Mo.App. 237, 174 S.W. 442, a suit to restrain unfair trade practices, defendant insisted plaintiff's hands were unclean because during the pendency of the suit plaintiff caused to be published in newspapers, on theater screens and on hand bills, charges that defendants were criminals, thieves, body-snatchers, receivers of stolen goods and insulters of women. The court held that the plaintiff was not barred by the clean hands doctrine from equitable relief since plaintiff's right of action was not founded upon the reprehensible conduct and was not so connected therewith that in giving equitable relief the court must thereby approve plaintiff's conduct.

In Barnes v. Barnes, 282 Ill. 593, 118 N.E. 1004, 1005, 4 A.L.R. 4, the court took the same view, holding the plaintiff who based a suit on some genuine letters and some forged letters was not barred by the clean hands doctrine from suing on claims established by the genuine letters. The court said:

"* * * where the origin of the claim is not inequitable, a fraudulent act in relation to it will not bar relief. * * *".

See also N.L.R.B. v. Fickett-Brown Mfg. Co., Inc., 5 Cir., 140 F.2d 883; Knights of Ku Klux Klan v. Strayer, 3 Cir., 34 F.2d 432; Flannery Bolt Co. v. Greenslade, D. C., 26 F.Supp. 502; Cunningham v. Pettigrew, 8 Cir., 169 F. 335; Shaver v. Heller & Merz Co., 8 Cir., 108 F. 821.

The contrary view is represented by American Ins. Co. v. Scheufler, 8 Cir., 129 F.2d 143, cited by appellee, and by McKee v. Fields, 187 Or. 323, 210 P.2d 115. This view seems based upon the idea that equity may impose whatever conditions it may choose precedent to granting relief, and thus may exclude a suitor whose conduct is or has been distasteful to the court.

We feel that where the right itself is not based upon inequitable activity, a court of equity is not the proper forum for punishing this sort of conduct, unless it amounts to contempt. There exists better "machinery to determine the gravity of the offense, and to make the punishment fit the crime." If John Maas has committed any crime, he may be indicted for it, and Stanley Maas may also bring a civil suit for any damages he has suffered as a result of John's actions.

The learned Chancellor committed prejudicial error in refusing to entertain the petition and in failing to declare the rights of the parties.

Ordinarily it would now become our duty to declare the rights of the parties, but proof has not yet been taken upon all the issues raised by the pleadings.

Stanley Maas asserts a lien upon the property for sums expended by him in good faith in permanent improvement of Tucker's Lake, without knowledge on his part of the invalidity of the deed through which he and his mother before him had claimed title. On a return of the case proof should be permitted upon this issue.

Proof was taken upon the issue as to whether the instrument of February 11, 1941, was a deed or mortgage.

Parol evidence is always admissible to establish that a deed absolute on its face is actually a mortgage. The character of the transaction is fixed at its inception and is not changed by subsequent events. "Once a mortgage, always a mortgage" has become a maxim of equity. Newsom v. Greer, 314 Ky. 347, 235 S.W.2d 782, and cases cited therein.

The burden is upon him who claims a mortgage to prove it by clear and convincing evidence. Schuster v. Caldwell, 280 Ky. 802, 134 S.W.2d 624; Gish v. Terrell, 266 Ky. 424, 99 S.W.2d 168; Stokeley v. Flanders, Ky., 128 S.W. 608 and cases cited.

There is ample evidence of this character in the record which convinces us that the instrument dated February 11, 1941, was a mortgage and we so find.

Judgment reversed for proceedings not inconsistent with this opinion.

CAMMACK, C. J., and COMBS, J., dissent for the reason that appellant's misconduct in connection with this litigation has been shown to be so shocking, unconscionable and reprehensible that a court of equity should not entertain his petition nor lend its aid to him in his effort to seek equitable relief.