Argued September 13; affirmed October 11; petition for
rehearing denied November 15, 1949

McKEE *v.* FIELDS

210 P. 2d 115

*Harold A. Olson,* of North Bend, argued the cause for appellants. On the brief were Mullen & Olson, of North Bend.

*Joseph McKeown,* of Coos Bay, and *W. A. Johansen,* of Coos Bay, argued the cause for respondents. On the brief were McKeown & Newhouse, and W. A. Johansen, all of Coos Bay.

Before BRAND, Acting Chief Justice, and ROSSMAN, BAILEY, HAY and PAGE, Justices.

HAY, J.

Plaintiffs F. J. McKee and Edith M. McKee hold legal title to a tract of land in the city of North Bend, and plaintiffs McGowan have an equitable interest therein under a contract of purchase. The defendants, Pryne Fields and Mary Fields, own a tract adjoining the McKee property. There is a small frame dwelling-house on the McKee tract, the west wall of which is close to the dividing line between the two tracts. The

Fields property is on a somewhat higher level than the McKee tract, and at one time sloped abruptly toward the dividing line. A former owner of the McKee tract trespassed upon the sloping bank of the Fields property, leveled a part of it and laid a sidewalk thereon. Mr. Fields thereupon had the line surveyed and staked.

After the McKees became owners of their tract, considerable disagreement arose between Mr. McKee and Mr. Fields over the location of the dividing line and over the use of their respective tracts. In an endeavor to end the dispute, Mr. Fields, in February, 1944, on the advice of his attorney, caused a concrete retaining wall to be constructed upon his side of the line and leveled his tract by making a dirt fill behind the retaining wall. Although he employed a cement contractor to build it, the wall was a poor job of construction. When the dirt was filled in behind it, the wall cracked, and the upper portion thereof tilted toward the McKee tract and now projects over the dividing line, and at certain points impinges upon the wall of the McKee dwelling-house. The extent of the encroachment, including the thickness of the wooden form into which the cement was poured, which is still in place, is from 1/8 inch to 4 3/4 inches.

Plaintiffs brought this suit to secure a mandatory injunction requiring the defendants to remove the wall from plaintiffs' premises, and for damages. The defendants' answer denied that their wall encroached upon plaintiffs' property, charged that the cracking of the wall was caused by its having been undermined by trespasses of plaintiffs and their predecessors upon defendants' property, and prayed for damages in that regard.

After a hearing, the trial court entered a decree dismissing both complaint and counterclaim. The briefs indicate that the judge stated, in a memorandum opinion, that neither the fact nor the extent of the encroachment had been proved to his satisfaction. The plaintiffs have appealed from the decree.

■ No person may erect buildings or other structures on his own land so that any part thereof, however small, extends beyond his boundaries and encroaches upon adjoining premises. 1 Am. Jur., Adjoining Landowners, section 17. In such cases, mandatory injunction to compel the removal of the encroachment is a proper remedy. *Norton v. Elwert,* 29 Or. 583, 593, 41 P. 926; *Trunnell v. Tonole,* 104 Or. 628, 631, 208 P. 583; *Pradelt v. Lewis,* 297 Ill. 374, 130 N.E. 785, 14 A.L.R. 828, and anno., 831; *Geragosian v. Union Realty Co.,* 289 Mass. 104, 193 N.E. 726, 96 A.L.R. 1282, and anno., 1287; 1 Am. Jur., Adjoining Landowners, section 19.

■ A suitor in a court of equity is entitled to equitable relief only under the conditions which equity imposes. One of these conditions is expressed in the equitable maxim: "He who comes into equity must come with clean hands."

■ Unconscientious conduct by a party to a controversy, in respect of and connected with the matter in dispute, disqualifies such party from seeking the aid of a court of conscience. 1 Pom. Eq. Jur., 4th ed., section 404; *Reid v. Multnomah County,* 100 Or. 310, 329, 196 P. 394. The unconscientious or inequitable conduct must "in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." *Keystone Driller Company v. General Excavator Company,* 290 U.S. 240, 78 L. ed. 293, 297, 54 S. Ct. 146; *Platt v. Jones,* 149 Or.

246, 259, 38 P. 2d 703, 39 P. 2d 955; 19 Am. Jur., Equity, sections 473, 475; 2 Lawrence, Eq. Jur., section 1084.

"Equity is supposed to guard the portals of her jurisdiction jealously. No cause of action will be proceeded with which has become infected with fraud or other iniquity, it matters not when or how the facts are brought to the attention of the court. The distinction is, however, fundamental that the transgression which falls within this maxim ['clean hands'] must have infected the cause of action, so that to entertain it would be violative of conscience. * * * " Chute v. Wisconsin Chemical Co., 185 F. 115, 118.

■ The "clean hands" doctrine usually has reference to the complainant's conduct prior to the inception of the suit. Nevertheless there is good authority for holding, as we do, that he must not only come into court with clean hands, but must also keep his hands clean, during the pendency of the suit, by refraining from reprehensible conduct connected with the matter in litigation and affecting the equities between the parties. *Sullivan v. Chicago Bd. of Trade,* 111 Ill. App. 492; *Little v. Cunningham,* 116 Mo. App. 545, 92 S.W. 734; *Van Voorhis v. Van Voorhis,* 94 Mich. 60, 53 N.W. 964; Anno., 4 A.L.R. 44, 60.

During the pendency of the suit, the McGowans contracted to sell their interest in the McKee tract to Frederick G. Hull and Sarah B. Hull, who are now in possession thereof. Shortly after the Hulls went into possession, the defendants entered into a written contract with them, by which the defendants agreed to advance to them sufficient money to discharge the unpaid balance of the purchase price of the property, so that the Hulls might procure a deed thereto forthwith. The Hulls, on their part, agreed to secure re-

payment of such advance by a mortgage upon the premises, and stipulated, in consideration of such advance and of a lower rate of interest upon the mortgage indebtedness than they had been paying upon the unpaid remainder of the purchase price, to permit the retaining wall to remain in place, and to grant an easement to that end. When Mr. McKee learned of this agreement, he effectually prevented it from being carried out, by persuading the Hulls that it was illegal. He admitted, upon the witness-stand, that he had done so, and said that his only reason for such action was that he had contracted to convey the property to the Hulls by warranty deed, and that, if the retaining wall were permitted to remain as an encroachment, the Hulls might sue him for damages.

■ The evidence does not show in what manner the McGowans transferred their interest in the McKee tract to the Hulls, but it appears that the Hulls have not yet paid the McGowans the full amount of the sale price of such interest, and that, for that reason, the McGowans still claim some interest in the property. During the progress of the controversy, the relations between Mr. McGowan and Mr. Fields became extremely embittered; so much so that, on one occasion, they resorted to a mutual display of firearms. The agreement which was entered into between the Fieldses and the Hulls, and which was brought about by Mr. Fields' efforts, presented an opportunity for both the McKees and the McGowans to get their money out of the property and end the feud. The Hulls were in possession, and both they and the Fieldses were eager for peace. The Hulls had agreed to let the wall remain in place as an encroachment upon the property, and to grant an easement therefor. They were willing to waive

the right to object to the encroachment as a defect in the title, and Mr. McKee's excuse for blocking the settlement was not valid. Annotation: Marketable Title, 57 A.L.R. 1253, 1553. He was the chief actor for the plaintiffs, both in instituting this suit and in preventing settlement thereof. We find it difficult to believe that his actions in the latter regard were in good faith. The evidence persuades us, on the contrary, that they were tainted with bad faith, injustice, and unfairness. In those respects, his conduct does not commend him to a court of equity. *Providence Rubber Co. v. Goodyear,* 9 Wall. (U.S.) 788, 19 L. ed. 566; *Weegham v. Killefer,* (D.C., W.D. Mich.) 215 F. 168, 171, aff., (C.C.A. 6th) 215 F. 289; 19 Am. Jur., Equity, section 35. We feel that, under all the circumstances, the refusal of the trial court to issue a mandatory injunction in the premises was proper.

The decree is affirmed, with costs.