Argued February 2, reversed and remanded April 21, 1965

# TAUSCHER ET UX *v.* ANDRUSS ET UX
### 401 P. 2d 40

*Howard E. Parcel,* Portland, argued the cause for appellants. With him on the briefs was Harry H. Daniel, Portland.

*David P. Templeton,* Portland, argued the cause for respondents. With him on the brief were Verne Dusenbery and Dusenbery, Martin, Beatty & Parks, Portland.

Before McAllister, Chief Justice, and Perry, O'Connell, Denecke and Lusk, Justices.

O'CONNELL, J.

This is a suit for a mandatory injunction requiring defendants to change the location of a moorage line. Plaintiffs appeal from a decree denying them equitable relief.

Plaintiffs and defendants own adjoining parcels of land along the Columbia river and both operate

marinas. Originally Tom Lineham owned both parcels constituting at that time one parcel with a 250-foot river frontage. In 1950 he established the first moorage in the area by driving dolphins in a northerly direction into the river. In 1954 he sold to defendants the west 150 feet of his property. The moorage extended from the eastern boundary of this parcel. Lineham then built another moorage extending from the eastern boundary of the parcel he retained. He sold this parcel to plaintiffs in 1955. Thereafter defendants extended their moorage from time to time until in 1960 it was about 400 feet from the shore. At this stage in the construction of defendants' moorage it was nearly parallel with plaintiffs' moorage providing an opening of approximately 100 feet for boats to enter plaintiffs' marina.

In 1960 defendants added approximately 250 feet to their moorage on a new course angling to the east of the existing moorage and thus converging toward the line in which plaintiffs' moorage was being extended. In 1962 the end of plaintiffs' moorage was 600 feet from shore. The opening to plaintiffs' marina was thus reduced from approximately 100 feet to approximately 75 feet.

Plaintiffs contend that the line along which the parties had constructed their moorage facilities prior to 1960 is the correct line and any addition to these facilities should, in each case, be confined to an extension of the course of the original lines. The original lines were approximately at right angles to the mean of the shore contours along the front of plaintiffs' and defendants' land. Defendants contend that the lines establishing the respective moorage rights should be drawn at right angles from the interstate boundary line separating the states of Oregon and

Washington. The trial court refused to accept defendants' position and held "that the proper and equitable line to be extended northerly for driving dolphins as affects these two parcels of land is a line proceeding northerly at approximately right angles to the northerly boundary of the parties' respective freeholds." However, the trial court refused to grant a mandatory injunction for the removal of the last 250 foot section added to defendants' moorage. The court's conclusion was based upon the theory that it was the function of a court of equity to make a division of deep water frontage upon an equitable basis and that since the cost of removing the encroaching part of defendants' moorage was markedly greater than the loss resulting to plaintiffs due to the impairment of access to their marina it would be inequitable to grant the injunction.

■ We agree with the trial court's designation of the boundary line but we are of the opinion that plaintiffs are entitled to a mandatory injunction ordering the removal of defendants' encroaching structures. It appears to us that the location of the boundary line by running a line approximately perpendicular from the shore of the parcels in question is an equitable method of apportioning the water area. Although the shore line fronting plaintiffs' and defendants' parcels is not straight, a mean of the contours establishes the general line of the shore from which a perpendicular boundary line can be run. No other method of apportionment provides a more satisfactory solution to the problem of making a division of the water area.[1]

---

[1] See Columbia Land Co. v. Van Dusen Invest. Co., 50 Or 59, 91 P 469 (1907), recognizing that the court may choose from a variety of apportionment methods depending upon the facts of the particular case. *Accord:* Anno., 65 ALR2d 143, 153 (1959).

■ The boundary line having been so established, each of the adjoining owners has the exclusive right to access in the area within his boundary lines and any unprivileged entry in that area is actionable.

■■ Although, strictly speaking, plaintiffs' interest may not be an easement since it arises de jure as an incident to riparian ownership rather than by grant, prescription or implication, the principles of the law of easements may be employed in describing plaintiffs' rights. An easement owner has the right not only to be free from interference with his actual use, but also his possible prospective uses.② The principle is illustrated in 5 Restatement, Property § 510, Illustration 3 at p. 3106 (1944), by the following hypothetical case.

"A owns an easement of way consisting of the privilege of maintaining a road thirty feet wide across Whiteacre, which is owned and possessed by B. C, a stranger, erects a fence which reduces the space available for use as a road to twenty feet. Twenty feet is sufficient for A's needs. A has a cause of action against C."

It is not necessary for the easement owner to show that he has plans for certain uses in the future which would be interfered with by a defendant's conduct if that future use were made; it is enough if the easement owner proves that there has been an encroachment. The evidence clearly establishes an encroachment in the present case.

■■ There being an encroachment, plaintiffs are entitled to a mandatory injunction ordering the removal unless it would be inequitable to require such removal. Under the proper circumstances the court will consider the relative hardship of the parties and

---

② 5 Restatement, Property § 510, comment c at p. 3105 (1944).

if the removal of the encroaching structure would cause damage to the defendant disproportionate to the injury which the encroachment causes plaintiff, an injunction will not issue.[8]

It is not enough for the defendants to show that their damage will outweigh the plaintiffs' benefit; they must go further and show that their damage would be great and the plaintiffs' benefit would be relatively small. Since the defendants are in effect asking the court to recognize a kind of eminent domain for private purposes, the disproportion between their damage resulting from the removal of the encroachment and the plaintiffs' damage if the injunction is denied must be great.

We do not find such a disproportion in the present case and therefore we are of the opinion that the mandatory injunction should have been granted.

The decree of the lower court is reversed and the cause is remanded with directions to grant an injunction ordering the removal of the encroachment from plaintiffs' area of access.

[8] Cases are collected in 28 ALR2d 679 (1953).