Argued and submitted June 1, affirmed as modified
December 24, 1979, reconsideration denied February 6,
petition for review denied March 18, 1980 (288 Or 701)

# COLLINS,
*Respondent,*
*v.*
# RATHBUN, et al,
*Appellants.*

## (No. 76-1153-E-2, CA 11336)

604 P2d 441

Donald H. Coulter, Grants Pass, argued the cause for appellants. With him on the brief was Myrick, Coulter, Seagraves & Myrick, Grants Pass.

E. R. Bashaw, Medford, argued the cause for respondent. With him on the brief was Brian B. Mullen, Medford.

Before Richardson, Presiding Judge, and Gillette and Campbell, Judges.

GILLETTE, J.

## GILLETTE, J.

In this equity suit plaintiff's complaint sought a declaration that a commercial building being constructed by the defendants Rathbun[1] violated the City of Jacksonville's Ordinance No. 90 because there was not enough vacant space left on the lot to fulfill the ordinance's off-street parking requirements. Plaintiff also sought to enjoin the alleged violation. The trial court found for plaintiff and decreed that Ordinance No. 90 required that "twenty-four off-street parking spaces be provided for the building constructed by the defendants Rathbun * * * and that the lot on which the building is constructed have the area necessary to meet the off-street parking requirement * * *." The trial court also placed certain conditions upon the use of the building and the payment of the rent until the building was brought into compliance with the ordinance. We modify certain aspects of the decree with respect to remedy, but otherwise affirm.

Plaintiff and defendants Rathbun own adjoining real property in Block 8 fronting on California Street in the "downtown" or commercial area of Jacksonville. The area is dominated by 19th century brick buildings which give the area special historic and economic value. In 1966, the City of Jacksonville adopted Ordinance No. 90, which required off-street parking for any building constructed thereafter. In 1969, the City adopted ordinance No. 121, which created the "Jacksonville Historic Preservation District."

Plaintiff purchased his building in Block 8 during the 1960s. Defendants Rathbun purchased a vacant lot which adjoined the plaintiff's building in the early part of 1975. Both plaintiff's and defendants' property are within the Historic Preservation District and are zoned "C-1 or Commercial-Retail District."

---

[1] Defendant Jackson County Federal Savings & Loan Association is the beneficiary in a recorded trust deed on the property in question.

In May, 1975, defendants Rathbun submitted to the Historic Preservation Commission (which reviews plans for building within the district) an application and plans to build a commercial building. After public notice and a hearing the Commission issued a "certificate of appropriateness" for defendant's building, which was to be known as the "Jacksonville Mining Company Building." In August, 1975, defendants Rathbun applied for a city building permit. In the space where "required parking" appeared on the form, only a slash mark was inserted.[2] The building permit was issued in October, 1975.

In December, 1975, defendant Ner Rathbun was elected to a position on the City Council of Jacksonville.

Construction on the Jacksonville Mining Company Building began in early March, 1976. Plaintiff's complaint in this case was filed on May 17, 1976. At that time, the building was approximately 75 percent complete. Construction continued and the building was completed in August, 1976. It was a two- story wood-frame building occupying approximately 3,500 square feet of the approximately 6,000 square foot lot. It was designed to house eight separate business tenants. Under the terms of Ordinance No. 90, these businesses would require 24 off-street parking spaces, or 4,320 square feet of parking space.

The case was first set for trial on December 14, 1976. It was postponed on the representation that the city council had a "special district" ordinance under consideration. Defendants Rathbun were granted a

---

[2] Defendant Ner Rathbun testified that he had gained the impression that it was not necessary to comply with the off-street parking requirements. This impression was in part received from his conversations with the mayor and a council member. Plaintiff counters this testimony by pointing out examples where the off-street parking requirements were enforced, including a building constructed by defendant Jackson County Federal Savings and Loan Association. This building is across California Street from defendants Rathbuns' property and was completed in 1975. The trial court found that Ordinance No. 90 "has been enforced intermittently and in the discretion of the Jacksonville City Council."

temporary variance from December, 1976, to May, 1977. They moved for summary judgment on June 29, 1977, based upon recently-adopted Ordinance No. 205. The motion was denied.

The case went to trial on July 13, 1977. On August 3, 1977, while the trial court had the case under advisement, defendants moved to "re-open" the trial. The motion was granted. Defendants filed a fourth amended answer which included a general denial and the following affirmative defenses:

"(1) The plaintiff, with full knowledge of all things, silently stood by while defendants constructed their building;

" * * * * *

" * * * * *

"(4) That on August 2, 1977, the City of Jacksonville had adopted a new ordinance (No. 212) which created a parking district, and thereby exempted defendants from providing their own off-street parking * * *."

The trial reconvened on February 1, 1978. At the end of the second trial the court took the case under advisement. It issued a memorandum decision on May 9, 1978, finding for the plaintiff. Defendants have appealed.

Defendants' first assignment of error states that the trial court erred in its construction of Ordinance No. 90 by declaring that the ordinance requires defendants to provide off-street parking spaces on the lot on which their commercial building is situated.

Ordinance 90 is the general zoning ordinance for the City of Jacksonville. It creates zoning districts, prescribes lot sizes and uses and regulates off-street parking, among other matters.[3]

---

[3] It also provides in Article 3, for an "Historic Jacksonville Area," but leaves the size, location and other characteristics of the area to be fleshed out by later city council action. That action was Ordinance No. 121, described *infra.*

Concerning parking, the ordinances provides:

"*Section 502. Off-Street Parking*

"In all districts, except those specifically excepted and noted, in connection with any use whatsoever, there shall be provided, at the time any building or structure is erected, or is enlarged or increased in capacity, or the use is changed or increased in intensity, off-street parking spaces for automobiles for the enlarged or increased portion in the case of an addition or for the building, structure or use in other cases, in accordance with the requirements herein."

As noted, the building in question was constructed in an area zoned "C-1". Ordinance 90 provides in pertinent part concerning an area so zoned:

"*Section 206. C-1 or Commercial-Retail District*

"* * *

"*(4) Area, Width and Yard Requirements.* None required *except as necessary to meet the off-street parking and loading requirements* or as a condition of approval for a conditional use.

"* * *

"*(7) Off-Street Parking.* All uses shall provide off-street parking as required in Article 5 [Section 502, *supra*] except when located within a special district organized to provide common public parking areas." (Emphasis added.)

The crucial issue under this first assignment of error is whether or not Ordinance 90 requires that off-street parking in a C-1 zone be "on-site." The trial judge found that it did. We agree. It would be impossible to give any meaning to that portion of Section 206(4), *supra*, which states that there is no minimum area requirement for a lot in the C-1 zone "except as necessary to meet the off-street parking * * * requirements" unless the ordinance is interpreted to mean that the off-street parking referred to must be on-site. If parking were permissible at some other location blocks away, there would be no reason to cross reference lot size with off-street parking at all.

Defendants point to language elsewhere in Ordinance 90 which they say indicates that the ordinance does *not* require that off-street parking in the C-1 zone be on-site: Section 204, which deals with "R-2 Residential-Two Family Districts," describes one "conditional use" in such a zone as,

"* * *

"h. Off-street parking lots adjoining a C or M district, subject to the provisions of Article 5."

Defendants argue,

"The inclusion of the designation 'adjoining a C or M district' in this verbiage, seems necessarily to import that 'lots' within these residential districts, conditionally may be employed to service, for parking purposes, premises in adjoining commercial districts. If this is so, the servient property might not necessarily, and probably would not, abut upon, or be contiguous to, the dominant commercial property. The phrase 'subject to the provisions of Article 5,' means no more, in our understanding, than that such servicing areas must supply a quantum and quality of off-street parking as required by the reference Article. We believe, therefore, that the language of the ordinance implies approval of 'off-site' parking."

We disagree with defendant's interpretation. Section 206(h) appears to contemplate the establishment of general parking areas to supplement parking available in the C-1 zone as a whole. Nothing in the section suggests that it is designed to in any way qualify the primary obligation which devolves upon a C-1 property owner pursuant to section 2-6(4), *supra.*

Defendant's next assignment of error is that

"[t]he trial court erred in declaring rights and duties with respect to off-street parking based solely on the general zoning ordinance, without construing that ordinance in relation to other municipal legislation affecting the same issue."

Defendants assert that the trial court should have considered the provisions of Ordinance 121, which was enacted subsequent to Ordinance 90 and which established the Jacksonville Historic Preservation area.

[863]

Assuming (without agreeing) that the trial court did not consider Ordinance 121, we are not told by defendants how any provision of that Ordinance establishes repeal of the earlier ordinance or, indeed, how the two are necessarily incompatible.

Defendants next argue that the trial court erred in holding that two other ordinances enacted subsequent to Ordinance 90 were ineffective in their attempt to establish a "special district" for public parking and thereby exempt the private property owners in the historic area from providing parking. The two—Ordinances 205 and 212—were both attempts to establish a special parking district in the area in question. Ordinance 212[4] did not repeal or amend the parking provisions of Ordinance 90 but rather purported to create a special parking district encompassing downtown Jacksonville's historical preservation area. A validly created parking district would have brought commercial buildings located in the district described by Ordinance 212, including Rathbun's, within an exception to the operation of the off-street parking provisions of Ordinance 90. The city had already purchased land which was to be developed as a parking facility to serve another nearby tourist attraction. The trial court held, however, that Ordinance 212 failed to create such a special district for several reasons, one of which was that no prior notice had been served upon the owners of property to be affected by the occupation tax which the ordinance contemplated would serve as a revenue source to fund the parking facility. ORS 223.391.

The statutory scheme governing the creation of parking districts requires that a municipality considering such a project conduct a hearing to enable potentially aggrieved parties to voice objections to the proposed improvement. ORS 223.389. The trial court

---

[4] Defendants also offer Ordinance 205 (which was passed while the first case at bar was pending) as further evidence that the off-street parking provisions of Ordinance 90 no longer applied to the downtown area. Since Ordinance 212 is an almost identical successor to Ordinance 205 we will only discuss Ordinance 212.

expressly found that no notice to affected property owners had been given. From this, it could be inferred that no hearing on the advisability of the parking facility was held. At least, absent proper notice, no *valid* hearing took place. That being so, Ordinance 212 could not have established a parking district within the meaning of ORS 223.387 *et seq.* Defendants do not contend otherwise in their briefs. Rathbun's building was not exempt from complying with Ordinance 90's off-street parking requirements.

Defendants next argue that plaintiff is barred from obtaining judicial relief by reason of laches. They insist that, because he saw an architect's drawing of the front of the proposed building displayed in a window of a neighboring building during the summer of 1975, and because building plans had been submitted to the historic commission on May 4, 1975, leading to a "certificate of appropriateness" on July 15, 1975, plaintiff knew the dimensions of the building almost a year before he filed suit on May 17, 1976. Plaintiff, on the other hand, testified that he first became aware of the building's bulk in relation to the entire lot when the foundation was completed on March 31, 1976. Approximately two weeks later, he traveled to Medford where the Jackson County Building Department had possession of Rathbun's building plans. Plaintiff claimed that it was only then he realized that the building plans had made no provisions for on-site parking spaces and that the part of the building permit pertaining to parking had a slash through it.

This realization prompted a series of letters directed to the city council, of which defendant Rathbun was a member. The first letter, sent April 13, 1976, inquired as to why the parking requirement had been waived for Rathbun's building. The second letter, sent May 7, asked what action had been taken on plaintiff's earlier inquiry. Although the minutes of the weekly city council meetings between April 13 and May 17 (the date plaintiff filed his complaint) indicate that

Rathbun was present at each, they do not disclose whether the letters were read aloud. The mayor could not recall whether the letters were read. In any event, Rathbun testified that the first time he was notified about plaintiff's concern over, or objection to, the off-street parking exemption was when he was served with the complaint in this matter on May 17, 1976. At that point, the building was 75% completed; all that remained to be done was to apply drywall and to install windows and siding. Rathbun proceeded to complete the building.

Defendants' argument charges plaintiff with knowledge of the off-street parking violation from the time it might have been discovered had he been more discerning or inquisitive. However, the period for the application of laches commences when a plaintiff could have, through the exercise of due diligence, become aware or actually did become aware of a threatened violation, whichever comes first. *See Swaggerty v. Peterson*, 280 Or 739, 745, 572 P2d 1309 (1977). Under the circumstances here, that was the earliest moment a reasonable owner of property in the area could have been put on notice that Rathbun's building posed a violation of the parking provisions of Ordinance 90. Plaintiff made no effort to notify Rathbun personally between March 31 and May 17, but that may be explained by the fact that it was reasonable to assume that the letters sent to the city council would come to Rathbun's attention. We hold that plaintiff was not guilty of laches.

Finally, defendants challenge the trial court's decree as being inequitable.

The trial court found that, although defendants Rathbun were aware of Ordinance 90 when they constructed the building, it would be inequitable to require that all or a portion of the building be torn down. We agree. The building now has other tenants who are not parties to this suit. Balancing the equities, it would be unfair to force these innocent third parties to vacate.

[866]

The trial court, however, directed that defendants ■ forthwith vacate that portion of the building which they themselves occupied and that this portion of the building be left unoccupied until defendants comply with Ordinance 90. We also agree with this provision of the decree.

The court's decree further provided that, whenever any present tenant vacated a portion of the premises, that portion must likewise remain vacant until defendants comply with Ordinance 90. We find this condition to be stringent but, under the circumstances, fair. It is affirmed.

Finally, the trial court's decree provided that ■ defendants Rathbun should pay over all rental receipts for the building to Jackson County, for deposit in the county's general fund, until defendants complied with Ordinance 90.

While substantial questions may be raised concerning the court's authority to order such a forfeiture, we need not consider them because we think, in balancing the equities, that this provision is unnecessary. Defendants are given sufficient incentives by the other portions of the decree to bring their property into compliance with Ordinance 90.

The provision in the trial court's decree relating to the payment of rental receipts to Jackson County is deleted. In all other respects, the decree is affirmed.

Affirmed as modified.