Argued and submitted June 29, affirmed and remanded for further proceedings
November 7, reconsideration denied December 21, 1984, petition for review denied
February 20, 1985 (298 Or 705)

GLOVER et ux,
*Respondents,*

*v.*

SANTANGELO,
*Appellant.*

(81-313-1; CA A28301)

690 P2d 1083

Glenn D. Ramirez, Klamath Falls, argued the cause and filed the briefs for appellant.

Mike Ratliff, Klamath Falls, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals the issuance of a mandatory injunction which ordered him to tear down his house because it obstructed plaintiffs' view in violation of a restrictive covenant. After *de novo* review we affirm, but we remand for consideration of alternatives to razing the encroaching structure.

Plaintiffs and defendant are the owners of adjacent parcels of real property in Klamath Falls. Both lots are on a hillside overlooking Mt. Shasta, Lake Ewana and the downtown area. Defendant's lot is on the downhill side of plaintiffs' lot and is encumbered by a restrictive covenant which benefits plaintiffs' property.

At the time the covenant was executed, the house in which plaintiffs now live was completed or nearly completed, and defendant's property was bare land. The covenant was executed "so that the value of Lot 9 [plaintiffs' lot] as a 'view Lot' would not be impaired by future erections on Lot 10 [defendant's lot]." It provides, in pertinent part:

> "* * * [N]o second story shall ever be erected on any building on said Lot 10 except in the area which is within 51 feet of the front lot line (bordering on Huron Street) and that any one-story dwelling erected anywhere on said Lot 10 other than in said 51 foot area shall have a roof pitch of not to exceed 2:12.[1] This covenant shall be appurtenant to and forever run with the land as a burden upon said Lot 10 for the benefit of said Lot 9."[2]

In the fall of 1980, defendant began construction of a house on his property, a substantial portion of which lies outside the 51-foot area. The house consists of a main level and a daylight basement. As soon as it became apparent to plaintiffs that the house was going to ruin their view, they attempted to obtain a temporary injunction to halt construction. Although it was denied, the trial judge told defendant that any further construction was at his own peril. It is beyond

---

[1] A 2:12 pitch roof means that, for every two inches of vertical rise, there is a 12-inch horizontal run. Defendant's compliance with the roof pitch restrictions is not an issue in this appeal.

[2] A separate paragraph of the covenant provided that lot 10 was entitled to "a perpetual right and easement in and to the hot water well" located on lot 9.

dispute that defendant's house substantially impairs plaintiffs' western view. However, their southern view of Mt. Shasta and Lake Ewana, across another neighbor's property, remains unaffected.

After completion of defendant's house, plaintiffs' request for a permanent injunction was tried to the bench.[3] The court concluded that defendant's house violated the covenant, because it was a two-story structure which he finished at his own risk with full knowledge of plaintiffs' complaint. The court based its conclusion on a finding that on the uphill side of the house, approximately one-third of the basement is constructed above what would have been the original grade of the property. It was also found that damages would be very difficult, if not impossible, to determine in regard to the loss of view. Accordingly, the court issued a mandatory injunction ordering removal of the encroaching structure.

Defendant raises a number of arguments on appeal, but they can be distilled down to three basic contentions. First, he argues that his house complies with the intent of the covenant. He contends that, because the best view from plaintiffs' property is to the south, toward Mt. Shasta and Lake Ewana, the covenant must have been intended to protect the view in that direction. He argues that, because his house does not interfere with plaintiffs' southern view, it does not violate the covenant.

The obvious answer to his contention is that a beautiful view is in the eye of the beholder. Moreover, as noted earlier, plaintiffs' southern view does not extend across defendant's property. It seems highly unlikely that the original parties to the covenant intended to protect plaintiffs' southern view by imposing height restrictions on a lot which lay directly west of their property. Rather, we conclude, protection of the western view was the object of the covenant.

Next defendant argues that his house complies with the express terms of the covenant. He correctly notes "that

---

[3] The trial of the main case was bifurcated. The issue of the alleged violation of the covenant was tried to the bench. The related issues of damages on plaintiffs' claim and defendant's cross-claim were tried subsequently to the jury. No damages were awarded.

plaintiffs were entitled to have their view protected only to the extent that their view would not be impaired by a building constructed in violation of the building restrictions" contained in the covenant. *Drulard v. LeTourneau,* 286 Or 159, 168, 593 P2d 1118 (1979). In other words, although nothing on the downhill lot obstructed plaintiffs' view when they purchased the property, they were at all times subject to defendant's right to build a house that complied with the conditions set forth in the covenant.

■　　From the express language prohibiting a second story, it is apparent that the covenant in this case was designed to limit construction on defendant's lot to a one story structure. Defendant asserts that, because his house complies with the Uniform Building Code definition of a single story structure, it cannot violate the covenant. Whether it does or not is irrelevant, because the code definition to which he refers did not exist when the covenant was executed, so it could not have been contemplated as the proper standard for judging compliance.

■　　There is other, more compelling evidence that clearly establishes a violation. After examining the evidence and reviewing the testimony, we note that defendant's house was built so that there are basement windows on its uphill side. To accommodate the windows, the main floor had to be raised off the ground several feet, necessitating a split entry design, where one enters at ground level but must climb either up or down a short flight of stairs to reach the main floor or the lower level. Clearly, defendant's house is higher than one story. Testimony about the extent of the violation was quite varied, but we agree with the trial court's finding that at least one-third of the lower level extends above what would have been the original grade. Plaintiffs should not be required to tolerate that substantial a violation.

■　　For his last argument, defendant asserts that, under the circumstances of this case, an award of damages would be more equitable than demolition of his house. In a proper case, a mandatory injunction can be denied if the damages associated with removal of the encroaching structure are disproportionate to the injury which the encroachment causes. *Tauscher v. Andruss,* 240 Or 304, 308-09, 401 P2d 40 (1965). This is not such a case. A view is a unique asset for which a

monetary value is very difficult to determine. Plaintiffs testified that the view was a crucial factor in their decision to buy the house. In fact, the view was one of the main reasons they were willing to negotiate the steep and occasionally icy streets leading to the house. Defendant's position is made weaker by the fact that he purchased with full knowledge of the covenant. He was, therefore, obligated to comply with it. *Duester v. Alvin*, 74 Or 544, 145 P 660 (1915); *see also Alloway v. Moyer*, 275 Or 397, 550 P2d 1379 (1976). Furthermore, following the preliminary injunction hearing, he made no effort to modify the design of his house, even though he had been advised by the trial judge that he would finish construction at his peril. Accordingly, we hold that plaintiffs are entitled to have the illegally obstructed portion of their view restored.

■ Nevertheless, we do not believe that defendant should be required to tear down his house if the structure can be modified to comply with the covenant. There is nothing in the record regarding any feasible alternatives. Recognizing the equitable nature of these proceedings and our need to balance the competing interests, we remand this case for further proceedings to determine whether defendant's house can be modified to comply with the deed restrictions.[4] We leave it to the trial court to specify what modification must be made by defendant if the court concludes that modification can bring defendant's house into compliance. We do not intend to preclude the trial court from again ordering that the house be torn down if the court determines that there is no alternative.

Affirmed and remanded for further proceedings.

---

[4] We are normally reluctant to remand a case which we have reviewed *de novo*. However, the sizeable interests that are at stake justify that step in this case. *See Oliver v. Skinner and Lodge*, 190 Or 423, 226 P2d 507 (1951).