Argued and submitted July 22, 1992, mandatory injunction vacated; remanded for
further proceedings June 2, reconsideration denied August 4, petition for review
denied August 24, 1993 (317 Or 486)

Jerry SEID
and Amelia Seid,
husband and wife,
*Respondents,*

*v.*

Lou ROSS,
*Respondent,*

*and*

Thomas CHUN,
*Appellant.*

(A8910-05972; CA A69470)

853 P2d 308

William H. Stockton, Hillsboro, argued the cause and filed the briefs for appellant.

Chris P. Ledwidge, Portland, argued the cause and filed the brief for respondents Seid.

Michael J. Gentry, Portland, waived appearance for respondent Ross.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DEITS, J.

### DEITS, J.

This is an action in equity for a mandatory injunction. Defendant Chun[1] appeals from an order requiring him to remove a concrete block retaining wall and fence located on the common boundary line between his and plaintiffs' residential properties. We review *de novo*.

Plaintiffs and Chun are the owners of adjacent residential lots, located one above the other on a terraced slope. Plaintiffs own the property below Chun's that was formerly owned by plaintiff Amelia Seid's brother, Jeffery Chan. Chun's predecessor in interest was defendant Ross. In 1982, Ross had a wall constructed on the boundary between his and Chan's lot. He did not obtain a survey and hired his son to do the work. At that time, Amelia Seid was a tenant on Chan's property. She gave Ross' son permission to enter her backyard to work on the wall. Some time after the wall was built, plaintiffs complained to Ross that the wall was too high, that his son had left dirt lying in the yard and that the wall seemed to have an insufficient foundation. Over the years, some of the caps on the top of the wall fell onto plaintiffs' side yard, but all of the caps had been removed by the time of trial. Plaintiffs purchased the property from Chan in 1987. At that time, they had received assurances from Ross that he would take care of their concerns about the wall, but he had done little to address the problems.

In October, 1989, plaintiffs filed this action against Ross. At about the same time, Chun purchased the Ross property. He was unaware of the dispute concerning the wall until April, when he was joined as a defendant. On October 15, 1990, Chun filed a cross-claim against Ross. The case initially went to arbitration, where Chun's and Ross' motions for summary judgment were allowed. Plaintiffs appealed the arbitration ruling, and the complaint and summary judgment motions were refiled in circuit court. Both summary judgment motions were allowed in part, disposing of plaintiffs' claims at law against Chun.[2] The remaining claim in equity

---

[1] Defendant Ross made no appearance in this appeal. Chun's cross-claim against Ross was dismissed below.

[2] Chun's and Ross' summary judgment motions against plaintiffs were granted on the affirmative defense of the statute of limitations.

against Chun was tried to the court, as was the cross-claim of Chun against Ross.[3] The trial court granted plaintiffs' request for injunctive relief, requiring Chun to remove the wall and its footings, and dismissed the cross-claim against Ross. Chun appeals the trial court's granting of injunctive relief.

The disputed wall is a concrete block structure made up of horizontal rows of blocks that are filled with aggregate and cement and fortified with reinforcing bars. At the back of the property, the wall is 11-1/2 rows high, which is approximately 7 feet, 6 inches, measured from the top of the footings. It gradually rises to 16 rows at the front of the property, where it is approximately 9 feet, 6 inches high from the top of the footings. The bottom portion of the wall is a "retaining wall," and the upper portion is a fence. A retaining wall is measured by the fill it retains; the fill is measured from the bottom of the footings to the top of the fill. The remainder of the wall above the fill constitutes the fence. The fill on Chun's side of the wall is 3 to 5 feet deep, measured from the top of the footings to the top of the fill.

A survey done shortly before trial revealed that the entire length of the wall was located over the property line, onto plaintiffs' property, by approximately 3-1/2 inches, and that the footings extended from 9 to 18 inches over the property line. The trial court found, and we agree, that the wall encroached onto plaintiffs' property. The trial court stated

"that the wall itself encroaches on the plaintiff[s'] property for a consistent three inches throughout the length of the wall. The Court finds that the wall's footings encroach onto [plaintiffs' lot] an additional approximate nine inches. The wall, at it's [sic] highest point, measures from footings to top, 9-3/4 feet."

The trial court granted plaintiffs' request for an injunction, relying on *McKee v. Fields*, 187 Or 323, 326, 210 P2d 115 (1949):

"No person may erect buildings or other structures on his own land so that any part thereof, however small, extends

---

[3] Plaintiffs voluntarily dismissed all claims against Ross before trial.

beyond his boundaries and encroaches upon adjoining premises. * * * In such cases, mandatory injunction to compel the removal of the encroachment is a proper remedy."

It held that an injunction was warranted in this case because

"this is more than an issue of a three-inch encroachment. The footings do extend onto plaintiff[s'] property by more than three inches. The size of the encroachment in this case does not limit plaintiff[s'] injury. The water seepage and erosion interferes with [their] use of the land, the ugliness of the wall interferes with [their] aesthetic enjoyment of the property, and the height of the wall blocks the sunlight from [their] windows on that side of the house. Additionally, there is a legitimate concern regarding the continuing stability of the wall."

■　　We agree that, under *McKee*, a mandatory injunction requiring the removal of an encroachment is an available remedy. *Winthers v. Bertrand*, 239 Or 97, 100, 396 P2d 570 (1964). Courts are not required to impose mandatory injunctions, but have the discretion to determine whether, under all of the circumstances, the encroachment should be removed. *See Andrews v. North Coast Development*, 270 Or 24, 32, 526 P2d 1009 (1974). As the Supreme Court explained in *Tauscher v. Andruss*, 240 Or 304, 308, 401 P2d 40 (1965):

"Under the proper circumstances the court will consider the relative hardship of the parties and if the removal of the encroaching structure would cause damage to the defendant disproportionate to the injury which the encroachment causes plaintiff, an injunction will not issue.

"It is not enough for the defendants to show that their damage will outweigh the plaintiffs' benefit; they must go further and show that their damage would be great and the plaintiffs' benefit would be relatively small. Since the defendants are in effect asking the court to recognize a kind of eminent domain for private purposes, the disproportion between their damage resulting from the removal of the encroachment and the plaintiffs' damage if the injunction is denied must be great." (Footnote omitted.) *See Zerr v. Heceta Lodge No. 111*, 269 Or 174, 523 P2d 1018 (1974).

■　　There is no question that the wall encroaches onto plaintiffs' property. However, after considering all of the circumstances here, we conclude that a mandatory injunction requiring that the structure be removed is not justified. This

is not a case where one party intentionally encroached onto another's property. *See Phillips Ranch, Inc. v. Banta*, 273 Or 784, 543 P2d 1035 (1975). Defendant Chun purchased his property after the wall was built by his predecessor in interest. Although the dispute about the wall was ongoing at the time of the purchase, he was not aware of the problem until he had moved in and was served with papers joining him in this lawsuit. Plaintiffs, on the other hand, had lived on their property before purchasing it. The wall was built while they were living there and the dispute that arose was between them and Ross, Chun's predecessor in interest. Ross apparently had assured them that their concerns would be taken care of but, nonetheless, they purchased their property knowing that the matter was unresolved.

Plaintiffs' principal concern about the wall is that it is unsafe. They presented testimony from a structural engineer, Looijenga, who opined that the wall was inadequately designed. He testified that, to be structurally sound, the rebar in the foundation should be approximately 14 inches deep and that there should be a vertical rebar in the concrete blocks every 7 inches. He also testified that the weep holes[4] at the bottom of the wall caused some erosion of the soil away from the footings and that that affected the stability of the wall. He also opined that "a four-foot high wall should have a footing * * * somewhere between two-feet-six and three-foot wide."

Ross' son was a certified bricklayer when he built the wall. He testified that he built the wall with half-inch rebar throughout. In contrast to Looijenga's opinion about the appropriate design, Ross' son testified that he laid the rebar for the foundation approximately 10 inches deep, that he placed vertical rebar every 4 feet, and that the footings of the wall were between 14 to 16 inches wide. He further explained that he laid the first row of blocks in a "bond beam course," which he stated is a row of bricks where "horizontally the center is cut out so that your rebar can lay in there. Then, when you pour your cement, it will grout, it will fill in like a bar of concrete that lays there with the rebar." He stated that such a construction "prevents the wall from developing vertical cracks and holds the wall together better."

---

[4] Weep holes are holes at the bottom of the wall to drain water from the fill side.

■ Relying on Looijenga's testimony, the trial court concluded that the wall was inadequately designed. On the basis of the record before us, we disagree. Although the wall, as Ross' son described it, did not meet Looijenga's specifications, there was no evidence that the wall did not comply with the applicable city building codes at the time that it was constructed. Stalsberg, a planner for the city's building department, testified as to permit requirements for retaining walls and fences. He stated that no permit had ever been obtained for Chun's wall, but that no permit is necessary for a retaining wall of 4 feet or less, or for a fence of 6 feet or less. He said that a retaining wall and fence may be combined to a maximum of 10 feet without a permit. Such a wall would not have to be built as Looijenga recommended.

In this case, the wall is under 10 feet tall at its highest point, give or take several inches to account for the height of the footings. The retaining portion of the wall is in compliance with city codes, except for the fact that the fill at some points on Chun's side of the wall exceeds the maximum allowable 4 feet without a permit. That problem can easily be remedied by removing some of the dirt along the wall. The remaining portion of the wall above the fill line is an approximately 6 foot high fence, which also is in compliance with the code.

■ Although the wall had been in place for about 9 years, both Looijenga and Stalsberg testified that there were no signs of cracking or falling. The wall was apparently out of plumb 2 inches and leaning slightly toward plaintiffs' property but, as Looijenga testified, it could have been built that way. Further, plaintiffs' safety concern about the loose tiles had been eliminated by the time of trial, because the tiles were no longer on top of the wall. We conclude that the record does not support plaintiffs' contention that removal of the wall is required for safety reasons.

Plaintiffs also complained that the wall was aesthetically unpleasant, that it blocked air and sunlight to the side of their house and that water seepage from Chun's property interfered with the enjoyment of their property. However, plaintiff Amelia Seid acknowledged that there were some drainage problems even before the wall was built. In addition, as indicated by the testimony of the city planner, Chun would

be entitled to build another 10-foot structure under the city's building code, which would also block air and sunshine to plaintiffs' property almost to the same extent that the existing structure does.

■       Turning to the consideration of the burden of removing the wall, we conclude that the cost would be substantial. Although no evidence was presented at trial as to the actual cost of removal, it is apparent from the record that it would require significant labor and machinery. In view of all the circumstances, we believe that the burden on Chun of removing the structure substantially outweighs the benefits to plaintiffs if the wall is removed. *Tauscher v. Andruss, supra.* While it is true that the wall and its footings encroach on plaintiffs' property, it is not so much the width of the wall that plaintiffs complain about. Rather, they are concerned with the maintenance of the footings, the dirt left from the construction, the height of the wall and its aesthetics.

In *Zerr v. Heceta Lodge No. 111, supra,* 269 Or at 180, the Supreme Court found that the facts of that case constituted an encroachment. The defendant's building had shifted over the years and the back of it was leaning against the plaintiff's building, extending 9 inches over the line and "bulging" in the middle. Further, the top of the front corner and the rear corner of the defendant's building was over the property line by 3 inches, and the eaves extended 15 inches over at the front and 24 inches over the line at the back. Finally, there was evidence that, because of the lean on the plaintiff's building, it exerted pressure on the plaintiff's building and devalued it by $10,000.

In concluding that the plaintiff was not entitled to a mandatory injunction, the Supreme Court concluded that the equitable defense of "disproportionate burden" set out in *Tauscher v. Andruss, supra,* prevented the remedy that the plaintiff sought. 269 Or at 186. Nevertheless, the court held that the plaintiff was not required to provide lateral support to the defendant's building and ordered the building to be jacked up at that corner to alleviate the pressure, which the evidence showed could be done at a reasonable cost. The court also declared that the defendant should have to remove the eaves from his building that hung over the plaintiff's property. However, it did not require removal of the part of the

building that encroached onto the plaintiff's property. It found that the plaintiff failed to prove any "substantial past damages" and, because of that, it concluded that the plaintiff would not suffer substantial future damages as a result of the encroachment with the modifications ordered. The court also stated that the plaintiff failed to show that he would receive any benefit beyond that which they would receive with the specified modifications. Accordingly, the court held that the defendant should be allowed an easement onto the plaintiff's land to the extent of the encroachment, and that the plaintiff could recover the full use and possession of the land if and when the defendant's property was removed or the encroachment was removed and that a nominal sum was sufficient to compensate for the easement. 269 Or at 187.

■ We think that a similar approach is appropriate in this case, given that most of plaintiffs' concerns could be remedied by less drastic measures than removing the wall. Short of removal, we conclude that Chun should be required to take certain actions to alleviate some of the problems posed by the wall. First, Chun should be required to correct the drainage and erosion problems caused by the weep holes. Chun should also be required to remove the dirt that Ross' son left in plaintiffs' yard during construction of the wall. In addition, due to the removal of the capping tiles, rainwater is now getting inside the wall. To maintain the health of the wall, Chun should also be ordered to take actions to prevent water from getting inside the wall. He should also reduce the fill on his side of the wall to no more than the 4 feet allowed by the city code. That means that he must remove that portion of the fill that exceeds 4 feet, measured from the bottom of the footings, for the entire length of the wall. Finally, the top portion of the wall, characterized as a fence, cannot exceed 6 feet under the city code. Chun should be required to remove any portion of the fence standing over 6 feet after the fill is reduced.

As in *Zerr v. Heceta Lodge No. 111, supra,* the result of our ruling is an easement on plaintiffs' property, but only until the wall is removed. Should Chun elect to take down the wall and replace it, rather than make the required repairs, he must do so within the proper boundaries of his property.

Nothing in the record indicates what the proper compensation to plaintiffs should be for an easement on their property, so we remand to the trial court for that determination.

Accordingly, we vacate the mandatory injunction and remand for further proceedings to fashion an order requiring Chun to undertake the required repairs and to specify a time limit in which Chun must complete the required work.

Mandatory injunction vacated; remanded for proceedings not inconsistent with this opinion.