Argued and submitted May 27, reversed and remanded August 5, 1998, petition for
review denied February 2, 1999 (328 Or 275)

Earl E. VOSSEN,
Cleda E. Vossen,
Chris Greenup, Susan Greenup,
Kenneth C. Snow, Frances E. Snow,
and Frank Leichleiter,
*Respondents,*

*v.*

Norman M. FORRESTER,
trustee for the Norman M. Forrester Trust,
*Appellant.*

(951769; CA A96078)

963 P2d 157

Randall P. Sutton argued the cause for appellant. With him on the briefs was Saalfeld, Griggs, Gorsuch, Alexander & Emerick, P. C.

Scott Beckstead argued the cause and filed the brief for respondents.

Before Riggs, Presiding Judge, and Landau and Wollheim, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

Defendant appeals the trial court's issuance of a mandatory injunction ordering him to remove all encroachments, including his home, from a 16-foot easement in plaintiffs' favor. On *de novo* review, ORS 19.425(3), we reverse and remand.

Defendant Norman Forrester bought a beachfront lot in Yachats in November 1993, after making inquiries of the city planner about whether a house could be built on the lot and receiving an affirmative answer. A title report on the property disclosed the existence of an easement described only by reference to Book 128, Page 315, Deed Records of Lincoln County, as well as several other easements described with more particularity. A map attached to the title report did not disclose the location of the easement described at Book 128, Page 315, Deed Records of Lincoln County, and defendant's deed made no reference to that easement.

After defendant bought the property, a group called the "Friends of the 804 Trail" asserted that the lot was too small for a house and opposed the issuance of a building permit.[1] Ultimately, the permit was issued and, in July 1994, while appeals in the above-described litigation were still pending, defendant began excavation in preparation for building his house. At that time, defendant did not have actual knowledge that the easement described in Book 128, Page 315, Deed Records of Lincoln County ran over the north portion of his property in such a manner that the planned house encroached 2.08 feet onto the southern portion of that easement. Defendant believed that the easement described in the title report was an easement over another portion of his lot. The actual easement described in Book 128, Page 315, Deed Records of Lincoln County was not apparent based on a visual inspection of the property.

---

[1] Aspects of that litigation are discussed in *Mills v. City of Yachats*, 134 Or App 581, 896 P2d 13, *rev den* 321 Or 512 (1995), and *St. John v. Yachats Planning Commission*, 138 Or App 43, 906 P2d 304 (1995). Although not named plaintiffs in the present case, the record reveals that the "Friends of the 804 Trail" are involved in financing the present litigation.

When defendant started construction in mid-1994, plaintiffs, who own the four properties benefitted by the easement, believed that the house might be encroaching on their easement. Several months before that time, they had observed that defendant had placed a number of other encroachments on the easement, including boulders and trees. They did not attempt to use the easement, however, and did not notify defendant either of the existence of the easement or of their belief that he was encroaching on it. Plaintiffs took no action because they believed that defendant would be ordered to tear down his house as a result of the "Friends of the 804 Trail" litigation.

In April 1995, when the house was substantially completed, plaintiffs filed this action seeking a mandatory injunction requiring defendant to remove the house and the various other obstructions from the easement, as well as a preliminary injunction to prevent defendant from occupying the house. Defendant attempted to settle this case by offering plaintiffs an easement over a different portion of the lot, slightly further to the north, but plaintiffs refused.[2]

The trial court granted partial summary judgment in favor of plaintiffs concerning the existence of the easement, and the parties went to trial on whether laches barred plaintiffs' claim and whether the trial court should balance the relative hardships to the parties in determining an appropriate remedy. At trial, the contractor who constructed the house testified that it had a foundation designed to withstand tsunamis, and that due to the nature of the construction, it would not be possible to move the house or to cut off the northern 2.08 feet from the house without harming its structural integrity.

The trial court concluded that defendant "knew or should have known" of the location of the easement, and that the defense of laches therefore did not apply. The trial court further concluded that because defendant "knew or should have known" of the location of the easement, it was precluded

---

[2] The settlement offer was made part of the record in this case.

from balancing the relative hardships of the parties in determining the appropriate relief. The trial court granted a mandatory injunction requiring defendant to remove the house, as well as the other encroachments, from the easement.

■ On appeal, defendant asserts that the trial court erred in determining that he was precluded from raising a laches defense and in determining that the court was precluded from balancing the relative hardships to the parties in determining what remedy was appropriate.

■ ■ We turn first to the question of laches. Where a defendant raises a defense of laches, but the analogous statute of limitations for an action at law has not run, the defendant bears the burden of proving that laches applies. *Fontana v. Steenson*, 145 Or App 229, 232, 929 P2d 336 (1996). In the present case, the parties agree that defendant bore the burden of proof. Defendant therefore was required to establish the three elements of laches: (1) that plaintiffs delayed in asserting their claim for an unreasonable length of time; (2) that plaintiffs had full knowledge of all of the relevant facts; and (3) that the delay resulted in such substantial prejudice to defendant that it would be inequitable to grant plaintiffs the relief requested. *Id.*, citing *Mattson v. Commercial Credit Business Loans*, 301 Or 407, 419, 723 P2d 996 (1986).

At the outset, we note that plaintiffs do not assert on appeal that the trial court correctly concluded that a laches defense necessarily must fail if a defendant "should have known" of an encroachment on an easement. Rather, plaintiffs assert that laches should not apply because defendant has "unclean hands" because he had actual notice of the easement when the house was constructed—an argument that the trial court rejected and that we also reject as inconsistent with our *de novo* review of the facts.

In order to determine whether plaintiffs delayed for an unreasonable length of time in bringing this action, we must first determine when plaintiffs had full knowledge of all of the relevant facts. Plaintiffs assert that they did not have full knowledge of all of the relevant facts until they were permitted to conduct a survey of defendant's property after this lawsuit was initiated. Defendant asserts that plaintiffs had

full knowledge of all of the relevant facts by the summer of 1994, when they observed the foundation of the house being constructed and suspected that it encroached on their easement.

We agree with defendant that the date from which the laches defense should be measured is mid-1994. Before that time, plaintiffs had observed that defendant had obstructed the easement with boulders, shrubs, and various other items. Plaintiffs saw the location of the foundation of the house, and suspected that the house was on the easement. Plaintiffs did not attempt to survey the property to find out if the house actually was on the easement until April 1995, the same month this litigation was commenced. Plaintiffs chose not to take action until April 1995, not because they lacked knowledge of the relevant facts, but because they hoped that other litigation would force defendant to remove his house. We conclude that plaintiffs were chargeable with full knowledge of all of the relevant facts by mid-1994 at the latest. *See Collins v. Rathbun,* 43 Or App 857, 866, 604 P2d 441 (1979), *rev den* 288 Or 701 (1980) ("the period for the application of laches commences when a plaintiff could have, through the exercise of due diligence, become aware or actually did become aware of a threatened violation, whichever comes first"); *Nyman v. City of Eugene,* 32 Or App 307, 320, 574 P2d 332 (1977), *aff'd on other grounds* 286 Or 47 (1978) (laches will begin to run when plaintiff is chargeable with knowledge that would put a person of ordinary intelligence on notice to inquire).

■■ We next turn to the question of whether plaintiffs delayed for an unreasonable time in bringing this action. Plaintiffs argue that delay to await resolution of other litigation is necessarily excusable, relying on persuasive authority from other jurisdictions. However, the cases they cite are not on point. In *Hill v. Hattrem,* 172 Cal Rptr 806, 117 Cal App 3d 569, 573 (1981), the court noted that "awaiting determination of a legal issue in another pending case may be excusable." Similarly, in *Hoehn v. Crews,* 144 F2d 665, 671 (10th Cir 1944), the court stated that "equity will not consider as laches delay due to a bona fide effort to assert a right at law." While we might find the rule of law announced on those cases persuasive in other circumstances, it does not assist plaintiffs in

this case. Here, the "Friends of the 804 Trail" litigation concerned whether defendant could build a *house* on his lot. It did not concern whether defendant could place encroachments in plaintiffs' easement. Even if the "Friends of the 804 Trail" litigation had been successful, it would not have prevented defendant from encroaching on plaintiffs' easement. Awaiting the outcome of litigation that pertains to an entirely different legal issue and that would not supply plaintiffs with a remedy does not justify a delay in bringing an action.

Although we reject plaintiffs' arguments that the pendency of the "Friends of the 804 Trail" litigation excused their delay, that does not end our inquiry. The question remains whether plaintiffs' delay in bringing this action between July 1994, when they had full knowledge of all of the relevant facts, and April 1995, when they first acted on their knowledge, was unreasonable. A delay of nine months in bringing a claim of this sort does not seem unreasonable, particularly given that defendant most likely would have had to possess the easement adversely for a period of 10 years in order to extinguish plaintiffs' easement. *See generally* ORS 105.620. Although plaintiffs' delay in bringing this action until defendant had expended considerable time and money in substantially completing his residence is not to be commended, we are unable to conclude that plaintiffs delayed for such an unreasonable amount of time that laches bars their claim. The trial court did not err in rejecting defendant's laches defense.

■　The remaining question, then, is whether the remedy ordered by the trial court was appropriate. Plaintiffs did not rebut defendant's evidence that the encroaching 2.08 feet of the house could not be removed without harming the structural integrity of the house, and the parties appear to agree that the trial court's order means that defendant must tear down the house entirely. Given the unrebutted evidence, we accept that assumption as well. The question is whether such relief is appropriate in this case.

■■　In determining whether mandatory injunctive relief is appropriate, "[c]ourts balance the equities between the parties in determining what, if any, relief to give." *Hickman*

*v. Six Dimen. Cust. Homes, Inc.*, 273 Or 894, 898, 543 P2d 1043 (1975). In cases involving encroachments, "[u]nder the proper circumstances the court will consider the relative hardship of the parties and if the removal of the encroaching structure would cause damage to the defendant disproportionate to the injury which the encroachment causes plaintiff, an injunction will not issue." *Tauscher v. Andruss*, 240 Or 304, 308-09, 401 P2d 40 (1965). The trial court apparently concluded that the present case did not constitute "proper circumstances" for the application of that rule because defendant "knew or should have known" of the existence and location of plaintiffs' easement before he constructed his house. However, the trial court explicitly found: "Prior to the filing of this action, defendant did not know the exact location of the boundary lines of plaintiffs' easement." Thus, it would appear that the trial court's conclusion on this point was based on its belief that defendant "should have known," rather than that defendant "knew," that he was encroaching on the easement. Defendant argues on appeal that case law does not support the trial court's conclusion that whether a party "should have known" of an encroachment determines whether a court should engage in balancing the hardships to the parties when crafting an equitable remedy.

Plaintiffs do not attempt to argue that the trial court's use of the "should have known" standard was correct but rather argue that the record supports their contention that defendant "knowingly" encroached on their easement. Plaintiffs contend that the court should apply the rule announced in *Swaggerty v. Petersen*, 280 Or 739, 747-49, 572 P2d 1309 (1978), that a court in equity should not balance the hardships to the parties where the defendant constructed the encroachment " 'with full notice of the other party's claim.' " *Id.* at 749, quoting *5 Pomeroy's Equity Jurisprudence* 4477 (2d ed 1919). *See also Seagrove Owners Assn. v. Smith*, 114 Or App 45, 49, 834 P2d 469 (1992) (court would not engage in balancing of hardships where defendant built in knowing violation of restrictive covenants). *But see Glover v. Santangelo*, 70 Or App 689, 694, 690 P2d 1083 (1984), *rev den* 298 Or 705 (1985) (even though defendant continued to construct house in violation of restrictive covenant after notice of plaintiff's claim, ordering house removed was inappropriate where

modification of the structure could be undertaken in order to "balance the competing interests").

Plaintiffs argue that actual notice, constructive notice and inquiry notice all constitute sufficient notice to preclude balancing of hardships in cases such as this. We do not agree. Defendant had actual notice that the easement existed from his title report, and certainly was on inquiry notice as to its location, but simply held a mistaken belief about its location. That does not mean, as plaintiffs assert, that defendant had actual knowledge that he was encroaching on their easement. This case is more comparable to *Seid v. Ross*, 120 Or App 564, 853 P2d 308 (1993), than to the cases cited by plaintiff where the defendants constructed a building with actual knowledge that it encroached on an easement or violated a restrictive covenant. In *Seid*, one of the defendants built a retaining wall between his and the plaintiff's property without first obtaining a survey. Subsequently, it was discovered that the wall encroached up to 18 inches onto the plaintiff's property. *Id.* at 567. It is unquestionable that the defendants such as those in *Seid* had at least constructive notice of the location of their property line. However, this court determined that a mandatory injunction requiring removal of the encroaching wall would not be equitable, given the minimal nature of the encroachment and the costs involved in removing the wall. *Id.* at 571.

Similarly, in *Zerr v. Heceta Lodge No. 111*, 269 Or 174, 523 P2d 1018 (1974), the question was whether a building that encroached approximately two feet onto a neighboring lot due to a mutual mistake should be ordered removed. Applying the balancing of hardships test from *Tauscher*, the court took into consideration the plaintiffs' relatively insignificant damages from the encroachment and their failure to show any substantial benefit from the removal of the encroachment, the substantial cost to the defendant of removing the encroachment, and the fact that the defendant acted in good faith. *Id.* at 185-86. In *Andrews v. North Coast Development*, 270 Or 24, 526 P2d 1009 (1974), yet another factor was considered in determining whether a plaintiff was entitled to a mandatory injunction requiring removal of a condominium complex from an area over which she had a view easement. In that case, although the plaintiff notified

the defendant immediately when she saw that construction of the condominium was likely to obstruct her view, she delayed bringing suit because the defendant had offered her a unit in the new condominium and she wanted to see what the new condominium would look like before deciding whether to accept the offer. In determining that a mandatory injunction to remove the encroachment was not in order, the court stated:

> "One reason [that a mandatory injunction would not be a proper remedy in this case] is the conduct of plaintiff in expressly or by clear implication permitting defendants to proceed with construction until she could determine whether she would agree to an exchange of her unit in Pacific View for a unit in Tillamook House with a view to the south that was important to her." *Id.* at 32.

With those cases in mind, we conclude that, in the present case, a mandatory injunction requiring defendant to remove his house from plaintiff's easement is not a proper remedy. In reaching that conclusion, we take into consideration the following factors. First, the cost of removing the house from the easement would be very substantial, given the unrebutted evidence that it would destroy the structural integrity of the house, because of the unique construction features designed to protect the structure from tidal wave action. *Seid*, 120 Or App at 571. Second, the encroachment of defendant's house onto the easement is minimal. *Id.; Zerr*, 269 Or at 185. Third, defendant did not know that he was encroaching on the easement when he built his house. *Swaggerty*, 280 Or at 749; *Seagrove*, 114 Or App at 49. Fourth, the hardship to defendant far outweighs any benefit to plaintiffs in this case, and, in fact, plaintiffs concede as much.[3] Finally, plaintiffs' conduct in this action is comparable in many ways to that of the plaintiff in *Andrews*, because they "expressly * * * permit[ted] defendant[ ] to proceed with construction" and delayed seeking a remedy for their own advantage. 270 Or at 32.

---

[3] As noted above, the easement in question, although created for roadway purposes, was not even visible when defendant purchased the property. Plaintiffs submitted evidence that they had used it on occasion to gain access to a nearby public trail and the beach. At oral argument, plaintiffs' counsel conceded that a balancing of hardships would weigh in defendant's favor.

We conclude that the trial court erred in issuing a mandatory injunction requiring removal of defendant's house from plaintiff's easement. We reverse and remand with instructions to relocate plaintiffs' easement to the north of defendant's house.

Reversed and remanded.